IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Republic Bank of Chicago,** ) | |
| **Plaintiff,** ) | |
| ) | **Case No: 13 C 6835** |
| v. ) | |
| ) | **Judge Ronald A. Guzmán** |
| **Michael Desmond, as Trustee and** ) | |
| **Delta Trading Company, Inc.,** ) | |
| **Defendants.** ) | |

### ORDER

On November 11, 2013, this Court granted the Trustee's motion to withdraw the reference of this adversary proceeding to the Bankruptcy Court. Before this Court, the parties agreed to forego any discovery and proceed with summary judgment based on the cross motions that had been filed with the Bankruptcy Court. For the reasons stated below, Defendants' motion for summary judgment is granted and Plaintiff's cross-motion for summary judgment is denied.

**Facts**

The relevant facts are undisputed. R&G Properties ("Debtor") was an Illinois general partnership that filed a voluntary Chapter 11 bankruptcy petition on October 8, 2009. (Trustee's Resp. Pl.'s Stmt. Facts, ¶¶ 2, 4.) On June 12, 2012, the Bankruptcy Court appointed the Trustee. (*Id*. ¶ 6.) The commercial real estate located at 5700 N. Central, Chicago, Illinois ("Property") is one of the assets of the Debtor's bankruptcy estate, which the Trustee administers. (*Id*. ¶ 14.) Citizens Bank ("Citizens"), as lessee and Robert and George Michael, as lessors, entered into a Store Lease ("Lease") on the Property beginning on October 1, 2002 and ending on September 30, 2007. (*Id*. ¶ 17.) Subsequent to the execution of the Lease, Robert and George Michael transferred ownership of the Property to the Debtor. After a lease renewal, Citizens Bank

remained in possession of the Property pursuant to the Lease until approximately April 23, 2010, when the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver for Citizens. (*Id*. ¶ 22.) On April 23, 2010, Republic Bank entered into a Purchase and Assumption Agreement with the FDIC, which provided in relevant part that: "The [FDIC] hereby grants to [Republic Bank] an exclusive option for the period of ninety (90) days commencing the day after Bank Closing to cause the receiver to assign to [Republic Bank] any or all leases for leased Bank Premises, if any." (*Id*. ¶ 25.) After receiving two extensions of time regarding its election to accept assignment of the Lease, Republic Bank notified the FDIC by letter dated September 21, 2010 of its election to "assume the lease for the Property from the FDIC." (*Id*. ¶ 27.)

Paragraph 24 of the Lease, as provided for in a rider, states in relevant part as follows: "Option to Purchase. (a) So long as Lessee is not in default hereunder, Lessor hereby grants to Lessee a nonassignable option to purchase the Premises . . . ." ("Purchase Option") (Stip. Facts, ¶ 16.) By correspondence to the Debtor dated January 31, 2012 and February 12, 2012, Republic exercised the Purchase Option. (Trustee's Resp. Pl.'s Stmt. Fact, ¶¶ 34, 35.) On June 27, 2012, seven days after the Trustee was appointed, Republic wrote to the Trustee tendering a copy of the Lease, the Purchase and Assumption Agreement with the FDIC, and its exercise of the Purchase Option, among other things, and notifying him that the closing for its purchase of the Property was to occur on September 30, 2012. (*Id*. ¶ 42.) On September 19, 2012, the Trustee notified Republic that he was refusing to honor Republic's exercise of the Purchase Option and demanded that Republic vacate the Property as of September 30, 2012, the end of the Lease term. (*Id*. ¶ 43, 44.) Republic remains on the Property but has paid no rent since the expiration of the Lease term on September 30, 2012. (Stip. Facts, ¶ 31.) Republic filed this adversary

proceeding on October 1, 2012, seeking a declaration that it, as assignee of the Lease, timely and properly exercised the Purchase Option and asking the Court to compel the Trustee to specifically perform and convey the property to it. (Stip. Facts, ¶¶ 31, 32; Trustee's Mot. Withdraw Ref., Dkt. # 1, at 2.)

**Standard**

Summary judgment is appropriate if, construing all facts and drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence to permit a jury to return a verdict for the nonmoving party. *Id*. The Court neither judges the credibility of witnesses nor evaluates the weight of the evidence when addressing a summary judgment motion. *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009).

**Analysis**

While Defendants[1] move for summary judgment on several grounds, the Court need only address the first one as it is dispositive. Defendants argue that as a matter of law, Republic did not have the right to exercise the option to purchase the Property because the purchase option

---

[1] Defendants are the Trustee and Delta Trading Company, which held a mortgage on the Property. Because certain arguments pertain only to the Trustee, the Court may refer only to the Trustee in discussing those arguments.

states by its express terms that it is not assignable. Under Illinois law, the Court's "primary goal in construing the contract is to give effect to the parties' intent as expressed in the terms of their written agreement." *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 379 (7th Cir. 2009). "When the terms of the contract are clear, the [C]ourt applies the terms as written, giving effect to the ordinary and natural meaning of the contract's language." *West Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.*, 928 F. Supp. 2d 976, 981 (N.D. Ill. 2013).

Here, the relevant Lease language states that "Lessor hereby grants to Lessee a nonassignable option to purchase the Premises." Because the clear and unambiguous contract language precludes assignment of the purchase option, Republic, as assignee of the Lease, could not exercise the option.

Republic's arguments to the contrary are unavailing. Republic contends that the Purchase Option was contained in a rider, which, with the Lease, constitute a "single, contiguous, and indivisible contract." (Pl.'s Resp. at 5.) Paragraph 21(c) of the Lease states that "[a]ll covenants, promises, representations and agreements contained herein shall be binding upon, apply and inure to the benefit of Lessor and Lessee and their respective heirs, legal representatives, successors and assigns." (Stip. Docs., Ex. 2, Lease, ¶ 21(c).) Therefore, Republic argues, because paragraph 21(c) provides that all of the promises in the Lease are binding upon the parties' successors, the Purchase Option is assignable. But this interpretation would require that the Court ignore the express term "nonassignable" in the Purchase Option and would, contrary to Illinois law, render the term meaningless. *Salce v. Saracco*, 949 N.E.2d 284, 289 (Ill. App. Ct. 2011) (courts must construe a contract such that none of its terms are rendered meaningless or superfluous). The language binding the heirs, successors and assigns does not

negate the nonassignable nature of the Purchase Option as stated in the express terms of the contract. *Seiler v. Zeigler Coal Holding Co.*, 782 N.E.2d 316, 320 (Ill. App Ct. 2002) (language in contract binding heirs, successors and assigns "did not enlarge" the language granting rights that were personal to the parties).

Republic also asserts that an option to purchase is an integral part of the Lease and is "indivisible." But the case Republic cites in support of this contention, *Garlick v. Imgruet*, 172 N.E. 164, 168 (Ill. 1930), does not support a finding that the option to purchase was not assignable. In *Garlick*, the Court concluded that because a grantee of property knew of the lease, he was also charged with knowledge of the option to purchase in the lease, because the "contract embodied in the lease is indivisible." *Id*. *Garlick* simply stands for the proposition that one cannot disavow knowledge of one part of the lease while acknowledging others. Nor is Republic's citation to *Ricke v. Ricke*, 405 N.E.2d 351 (Ill. App. Ct. 1980), apposite. In that case, the court concluded that an equipment lease was not indefinite in duration and therefore not terminable at will where it included an option to purchase the equipment at any time after a specified exercise date. *Id.* at 356. In so concluding, the court noted because the option to purchase was not an "independent undertaking" but an "integral part of the lease, neither the provision referring to the option nor the provision referring to the lease may be construed as independent covenants." *Id*. The *Ricke* court therefore found that the exercise date on the option to purchase "was sufficient to fix the term of the lease agreement." *Id.* Nothing in the language of *Ricke* precludes parties from agreeing that an option to purchase in a lease is nonassignable.

Finally, to the extent that Republic argues that the term "nonassignable" in the option to purchase meant that the Purchase Pption could not severed from the Lease and sold to a non-

5

lessee is rejected as it is contrary to the clear language of the contract and unsupported by any record evidence.

Republic responds to Defendants' motion for summary judgment and cross moves for summary judgment on the ground that the FDIC, as receiver, stands in the shoes of the failed bank and Republic stands in the shoes of the FDIC. Thus, Republic argues that because under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), the FDIC may, upon assuming its duties as a receiver, "transfer any asset or liability of the institution in default . . . without any approval, assignment, or consent with respect to such transfer," 12 U.S.C. § 1821(d)(2)(G)(i)(II), it properly assigned the Purchase Option to Republic pursuant to the terms of the Purchase and Assumption Agreement.

However, the FDIC as receiver stepped "in the shoes" of Citizen Bank, thereby "obtaining the rights of the insured depository institution that existed prior to receivership." *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994) (quotation marks omitted). Therefore, the FDIC only had the rights possessed by Citizen Bank when the FDIC took over as receiver. Because Citizen could not assign the Purchase Option, then neither could the FDIC. *Waterview Mgmt. Co. v. FDIC*, 105 F.3d 696, 701 (D.C. Cir. 1997) (finding that state law governs contractual relationships under FIRREA and that receivers cannot "increase the value of the asset in its hands by simply 'preempting' out of existence pre-receivership contractual obligations"). *See also In re Countrywide Fin. Corp. Mort.-Backed Sec.*, --- F. Supp. 2d ----, 2013 WL 4536177, at *8 (C.D. Cal. 2013) ("FIRREA does not manifest Congress' intent to alter the very nature of state claims to better enable the FDIC to enrich the deposit insurance fund."). Because "§ 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its

6

claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise," *O'Melveny*, 512 U.S. at 87, the FDIC was bound by the pre-receiver non-assignment provision.

Republic's citation to numerous pre-*O'Melveny* cases or cases that do not reference *O'Melveny* are inapposite. Republic's further conclusory statement that *O'Melveny* is "distinguishable" is unpersuasive.

Republic also argues that because under Illinois law an assignee acquires all of the assignor's rights and liabilities in the assignment, *Cmty. Bank of Greater Peoria v. Carter*, 669 N.E.2d 1317, 1319 (Ill. App. Ct. 1996), it acquired all of the rights in the Lease, including the Purchase Option. But, as discussed above, the Purchase Option is nonassignable and therefore Republic could not have acquired it in an assignment.

Republic further contends that waiver and estoppel preclude the Trustee from rejecting Republic's exercise of the Purchase Option because Republic had paid all rent and other expenses through the Lease term ending on September 30, 2012 when the Trustee notified Republic on September 19, 2012 that he would not honor the Purchase Option. However, paragraph 19 of the Lease states that:

> The Lessor may collect and receive any rent due from Lessee, and payment or receipt thereof shall not waive or affect any such notice, demand, suit or judgment, or in any manner whatsoever waive, affect, change modify or alter any rights or remedies which Lessor may have by virtue hereof.

(Stip Ex. 2, ¶ 19.) Thus, an express term of the Lease allowed the Trustee to accept rent without waiving any other rights under the Lease.

In any event, no waiver occurred. Under Illinois law, waiver is the "intentional relinquishment of a known right." *Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (Ill. 1991).

7

Here, Republic has the burden of showing that the Trustee knew of the Purchase Option and evidenced an intention to waive its right to contest Republic's exercise of the option due to the nonassignability clause. *Id.* "Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Id.* Republic argues that the Trustee's acceptance of rent constituted a waiver of his right to challenge Republic's Purchase Option. But the Court cannot discern how, and Republic does not cite to any caselaw supporting a conclusion that, a landlord's acceptance of rent during the period that Republic occupied the Property waives its right to enforce other terms of a lease. Republic occupied the property and, as the lessee, was required to pay rent. The Trustee accepted the rent through the end of the relevant Lease term, but rejected Republic's exercise of the option to purchase the Property at the end of that Lease term. These facts do not support a finding of waiver.

Nor do the facts demonstrate estoppel. "Equitable estoppel is defined as the effect of the person's conduct whereby the person is barred from asserting rights that might otherwise have existed against the other party, who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." *Palmich v. Kirsner*, No. 1-12-2230, 2014 WL 685575, at *8 (Ill. App. Ct. Jan. 21, 2014) (citations and internal quotation marks omitted). Republic asserts that "by demanding strict compliance with the Lease . . . the conduct of the Trustee induced Republic Bank to believe that the Trustee construed the Lease as valid in all respects." (Pl.'s Mem. Supp. Mot. Summ. J. at 10.) In Illinois:

> In order to establish equitable estoppel, the party claiming it must demonstrate: (1) that the other party misrepresented or concealed material facts; (2) that the other party knew at the time that he made the representations that they were untrue; (3) that the party claiming estoppel did not know the representations were

> untrue when they were made and when they were acted upon; (4) that the other person intended the party claiming estoppel would act upon the representations; (5) that the party claiming estoppel reasonably relied on the representations to his detriment; and (6) that the party claiming estoppel would be prejudiced by his reliance on the representations if the other person were allowed to deny the truth thereof.

*Palmich*, 2014 WL 685575, at *8. But Republic has failed to point to any misrepresentation or concealment of facts by the Trustee. Republic asserts that after it exercised the Purchase Option by letter dated February 23, 2012, counsel for the debtor indicated his apparent agreement with the exercise when he responded, "If the Bank is serious about purchasing the Property, please contact me to discuss the appraisal process and the scheduling of a closing date." (Stip. Ex. 6.) But Republic does not point to any ultimate agreement between it and the debtor nor does Republic point to any authority indicating that the Trustee is bound by the debtor's counsel's statement.[2]

For these reasons, the Court rejects Republic's invocation of waiver and estoppel. Because the Court concludes that the Purchase Option was not assignable, it need not address the Trustee's argument that there was no valid assignment of the Lease until after the Lease expired.

Finally, Republic's cross-motion includes a section entitled "The Delta Mortgage is Subordinate to the Lease." According to Republic, Delta's mortgage on the Property is subject to and subordinate to Republic's prior possessory interest. It is not clear what relief Republic

---

[2] Moreover, the Court notes that pursuant to Republic's request, George and Robert Michael signed a "Landlord's Consent" on May 28, 2010, in which they, on behalf of R&G Properties, the owner of the Property, consented to the assignment of the Lease to Republic Bank. However, upon signing the consent and before returning it, Robert Michael wrote on the form, "Acknowledged is the fact that the purchase option is terminated." (Def.'s Ex. 31, R. Michael Dep. at 64-65; Stip. Ex. 22.) While there is no record evidence that Republic agreed to this statement, the notation is evidence that it was on notice that the Purchase Option might not be valid.

9

seeks from the Court. The adversary complaint contains no count or prayer for relief against Delta Mortgage. In any event, Republic's relevant Lease term has expired and the Court has concluded that Republic had no option to purchase the Property. Accordingly, any request for relief against Delta Trading is denied.

For these reasons, the Court grants Defendants' motion for summary judgment and denies Republic's motion. The Trustee is directed to submit a proposed judgment order to the Court's proposed order inbox no later than April 30, 2014.

**Date**: April 21, 2014

**Ronald A. Guzmán**
**United States District Judge**