**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Republic Bank of Chicago,

          Plaintiff,

    v.

Michael Desmond, as Trustee, *et al.*,

          Defendant.

Case No. 13 C 6835

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Republic Bank of Chicago filed an adversary complaint in the Bankruptcy Court seeking to determine its rights with respect to certain commercial property previously held by the Debtor, R&G Properties. The Trustee administering the bankruptcy estate of R&G Properties, Michael K. Desmond, moved to have the reference withdrawn and, when that motion was granted, he filed a three-count counterclaim in this Court. After summary judgment proceedings resolved several issues, the Court conducted a bench trial to address the remaining issues. In accordance with Federal Rule of Civil Procedure 52(a), this Memorandum Opinion and Order reflects the Court's Findings of Fact and Conclusions of Law on the relevant issues of the case.

I.    Background & Procedural History

On October 8, 2009, R&G Properties filed a voluntary petition in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division,

commencing the case captioned *In re R&G Properties*, No. 09-37463. On June 20, 2012, Michael K. Desmond was appointed as the Chapter 11 Trustee of R&G's estate. On October 10, 2012, the Bankruptcy Court entered an order converting the Bankruptcy Case from Chapter 11 to one under Chapter 7. Desmond thus became (and is now) Chapter 7 Trustee of R&G's bankruptcy estate.

On October 1, 2012, Republic Bank of Chicago filed an adversary complaint against the Trustee and Delta Trading Company, Inc.,[1] seeking a declaratory judgment, specific performance and other relief relating to certain commercial property located at (and commonly known as) 5700 North Central Avenue in Chicago, Illinois (hereinafter, the "Property"). R&G owned the Property and it is one of the assets of R&G's bankruptcy estate, which the Trustee administers.

Citizens Bank leased the Property beginning October 1, 2002. The lease was initially executed to run through September 30, 2007. However, the lease was subsequently renewed, and Citizens Bank remained in possession of the Property until approximately April 23, 2010, when the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver for Citizens. That same day, Republic Bank entered into a Purchase and Assumption Agreement with the FDIC and, via letter dated September 21, 2010, Republic Bank then elected to assume the lease for the Property from the FDIC.

---

[1] According to the Adversary Complaint, "M&I Marshall & Ilsley Bank ("M&I") was the owner of a mortgage dated March 20, 2006 encumbering the Property and other real estate collateral to secure an indebtedness in the original principal amount of $8,077,540.00. Delta Trading Company is the current owner of the mortgage and the indebtedness secured thereby." *In re R&G Properties*, No. 09 B 37463, Adversary Complaint [1], ¶8 (Bankr. N.D. Ill. Oct. 1, 2012).

The lease executed by Citizens and R&G included a purchase option. By its terms, that option was non-assignable. Yet, by correspondence to R&G dated January 31, 2012 and February 12, 2012, Republic Bank (after assuming the lease from the FDIC) attempted to exercise the purchase option. On September 19, 2012, the Trustee notified Republic Bank that he was refusing to honor Republic Bank's exercise of the purchase option, and he demanded that Republic Bank vacate the Property by September 30, 2012, the original lease end date. Republic Bank refused to vacate, stopped paying rent and filed the adversary proceeding on October 1, 2012, seeking a declaration that it had the right to exercise the purchase option and asking the Court to compel the Trustee to convey the Property to it.

The parties agreed to expedite the resolution of the adversary proceeding by submitting to the Bankruptcy Court cross-motions for summary judgment on the issue of whether Republic Bank had the right to purchase the Property pursuant to the purchase option in the Citizens Bank lease. The Trustee moved to withdraw the reference because it believe the Bankruptcy Court, under *Wellness International Network, Ltd. v. Sharif*, 727 F.3d 751 (7th Cir. 2013), *rev'd*, 135 S.Ct. 1932 (2015), lacked constitutional authority to enter a final judgment in the matter. The Court agreed and, on November 5, 2013, entered an Order withdrawing the reference of this adversary proceeding and the Trustee's counterclaim pursuant to 28 U.S.C. § 157(d). [14]

On cross motions for summary judgment, the Court agreed in an order dated April 21, 2014 that the purchase option in the lease between R&G and Citizens

3

Bank was, by its express terms, non-assignable. *See* [16], p. 4. Thus, the Court held, Republic Bank could not exercise the option. Republic Bank moved for reconsideration [20], and the Court denied that motion [32].

Thereafter, the Trustee filed an amended counterclaim alleging breach of the lease (Count I), seeking judgment for possession (Count II) and damages for willful holdover (Count III). *See* [23]. That same day, the Trustee filed a motion for payment of use and occupancy. *See* [24]. In his motion, the Trustee argued that he was entitled to collect from Republic Bank, on behalf of the estate, $1,043,818.40 for holdover rent from October 1, 2012 through May 20, 2014, plus all subsequently accruing rent and other fees due under the lease. *Id.*, ¶¶15, 16. The Trustee noted in his motion that Republic Bank had apparently continued to maintain the Property and pay the real estate taxes, and so he was not at that time seeking payment of those items. *Id.*, ¶19.

To support his claim, the Trustee invoked Section 12 of the Lease, which governs holdover tenancy and provides as follows:

> If Lessee retains possession of the Premises or any part thereof after the termination of the term by lapse of time or otherwise, then Lessor may at its option within thirty days after termination of the term serve written notice upon Lessee that such holding over constitutes either (a) renewal of this lease for one year, and from year to year thereafter, at double the rental (computed on an annual basis) specified in Section 1, or (b) creation of a month to month tenancy, upon the terms of this lease except at double the monthly rental specified in Section 1, or (c) creation of a tenancy at sufferance, at a rental of 150.00 dollars per day, for the time Lessee remains in possession. If no such written notice is served then a tenancy at sufferance with rental as stated at (c) shall have been created. Lessee shall also pay to Lessor all damages sustained by Lessor resulting from retention of possession by Lessee.

Am. Counterclaim [23], Ex. 1 (Lease), § 12; Trustee's Exhibit 4 (Lease), § 12.

Republic Bank moved to dismiss the Trustee's amended counterclaim. [33]. The Court denied the motion and granted the Trustee's request for interim payment of use and occupancy in the amount of $20,000 per month. [43]. The Court declined to resolve definitively the issue of a fair and reasonable rental value for the Property and instead referred the matter to the assigned Magistrate Judge for an evidentiary hearing. *Id.*, p. 7. In the interim, the Court directed Republic Bank to make monthly payments of $20,000 for the period from October 1, 2012 to the date of resolution of the Trustee's claim for possession. *Id.*

The Court also determined that the Trustee was not entitled to collect double the rent under Section 12(b) of the lease because that provision was an unenforceable penalty. [43], pp. 3-4. The Court determined, however, that the Trustee was still entitled to seek "actual damages under that provision." *Id.*, p. 5. Thereafter, and before the planned evidentiary hearing was held, the parties filed an agreed joint stipulation that "the fair and reasonable base rental value for the Property is $20,000 per month on a triple net basis and $240,000 on an annual basis." [56], ¶1.

The Trustee then filed a motion for judgment of possession on December 9, 2014. [57]. On June 23, 2015, Delta Trading Company filed a motion for entry of judgment. [74]. On June 29, 2015, Republic Bank filed a motion asking the Court to certify its summary judgment ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and Federal Rule of Civil Procedure 54(b). [80]. On July 17, 2015,

the Court denied Delta's motion for entry of final judgment, denied as moot the Trustee's motion for judgment of possession (Republic Bank surrendered possession to the Trustee on November 30, 2014), denied Republic Bank's motion for certification and granted Republic Bank's motion to dismiss as moot Count II of the amended counterclaim (the count that sought judgment for possession). *See* [89].

The Court then set the matter for trial and held a pretrial conference on October 13, 2015. The bench trial was held, at the request of the parties, over three non-consecutive days: October 26, 2015, November 12, 2015 and January 7, 2015.

II.  Trial

In his opening statement to the Court, the Trustee argued that the issue before the Court was simple: whether Republic Bank breached the terms of the lease by failing to yield possession of the Property at the end of the lease term and by failing to pay all amounts due under the lease as a holdover tenant. Transcript of Proceedings of October 26, 2015 (Trial Transcript Volume 1) [121], pp. 9-11. The Trustee argued that Republic Bank breached the terms of the lease both by failing to yield possession of the Property and by failing to pay all amounts due as a holdover tenant. *Id.*

For its part, Republic Bank emphasized in its opening statement that it had never refused to pay rent. *Id.*, p. 16. Counsel for Republic Bank noted that neither the Trustee nor the Court ever requested that Republic Bank pay rent until the Trustee filed his motion for reasonable use and occupancy, which came after the Court issued its ruling in favor of the Trustee on the assignment issue. *Id.* Counsel

also represented that, thereafter, Republic Bank agreed to pay reasonable use and occupancy, but disputed the claimed amount – an issue that was subsequently resolved by stipulation of the parties. *Id.*, pp. 16-17. Once the question of the amount of the reasonable use and occupancy was resolved, Republic Bank paid the agreed amount. *Id.*, pp. 17-18. Counsel also argued in his opening that Republic Bank paid all real estate taxes, insurance and maintenance for the subject Property, and that it left the Property in the same condition in which it received it, ordinary wear and tear excepted. *Id.,* pp. 17-18, 21.

With regard to the Trustee's claim for accrued post-petition interest owed to Delta, counsel for Republic Bank argued that this liability has never been assessed against the bankruptcy estate and the reference with respect to this claim has never been withdrawn. Trial Transcript Volume 1 [121], pp. 20-21. Counsel made the same argument with respect to the Trustee's claim for attorney's fees owed to Delta. *Id.*, p. 20.

Counsel for Republic Bank also argued that the Trustee is not entitled to any holdover damages because Republic Bank was not a willful holdover and did not act in bad faith. Rather, as soon as the right to possession was resolved, Republic Bank took the necessary steps to vacate the Property (including providing notice to the FDIC, the state and its customers) and then, after the statutory notice period expired, it vacated the Property. *Id.*, pp. 21-22.

During the evidentiary phase, the Court first heard from the Trustee, Michael Desmond, who testified that he was appointed to serve as Trustee in the

R&G Properties case in June of 2012. Trial Transcript Volume 1 [121], p. 25. Desmond testified that, as Trustee, he is charged with administering the assets of the estate for the benefit of the creditors. In this case, the estate of the debtor, R&G Properties, included more than thirty residential, commercial and mixed-use real estate properties in and around the Chicago area. *Id.*, p. 26. Desmond testified that, once appointed Trustee, he retained his law firm, Figliulo & Silverman, to represent him in the bankruptcy case, and he hired Millennium Properties to serve as property manager for the estate's properties. *Id.*, pp. 26-27. Desmond testified that Daniel M. Hyman of Millennium first served as property manager and then also served as real estate broker to market some of the estate's properties for sale. *Id.*, p. 27. The Trustee testified that, at the time he was appointed, Republic Bank had already taken possession of the Property and was paying rent under the lease it assumed from the FDIC. *Id.*, pp. 27-28. Desmond testified that, at the time of his appointment, Republic Bank was paying $26,095.48 per month. *Id.*, p. 29. He testified that, in addition to rent, the lease (Trustee's Exhibit 4) required Republic Bank to pay expenses relating to the repairs and to reimburse the lessor for any damage to the Property. *Id.*

With respect to termination and holding over, the Trustee testified that the lease required the lessee, upon termination of the term of the lease, to yield up immediate possession of the premises to lessor in good condition and repair, loss by fire and ordinary wear and tear excepted. *Id.*, p. 30. The Trustee testified that, under Section 12 of the lease, when the tenant failed to yield possession of the

premises, he had the right to: (1) elect to renew the lease for one year or from year to year; (2) elect to treat the tenant as a holdover at double the rental value of the Property; or (3) elect to create a tenancy at sufferance at the rental rate of $150 per day. *Id.*, pp. 30-31. He testified that he elected to treat Republic Bank as a holdover tenant at double the contract rental value of the Property under Section 12(b) of the lease. *Id.*, p. 31.

Desmond testified that, soon after he was appointed Trustee, he sent Republic Bank a letter (Exhibit 5) advising Republic Bank that he contested any attempt by Republic Bank to exercise the purchase option included in the lease. *Id.* The Trustee testified that, when the lease expired on September 30, 2012, Republic Bank stopped paying rent; in response, he sent a letter on October 10, 2012 (Exhibit 6), advising Republic Bank that he was electing to treat Republic Bank as a holdover tenant under Section 12(b) of the lease. *Id.*, pp. 31-32. In his letter, the Trustee further advised Republic Bank that it would be responsible "for all damages incurred by the debtor resulting from the wrongful retention of possession by Republic Bank, including but not limited to the payment of attorney's fees and costs." Exhibit 6. He testified that Republic Bank filed the adversary proceeding in the bankruptcy court seeking specific performance and a declaration that it had the right to exercise the purchase option. Trial Transcript, Volume 1 [121], p. 33. The Trustee testified that Republic Bank never sought permission to remain in the Property. *Id.*

The Trustee further testified that, under Section 15 of the lease, he was entitled to recover for the estate "all lessor's costs, charges and expenses including fees of attorneys, agents and others retained by lessor incurred in enforcing any of the obligations of the lessee under this lease or in any litigation, negotiation or transaction in which the lessor shall, without lessor's fault, become involved through or on account of the lease." *Id.*, p. 31. He testified that, in his October letter (Exhibit 6), he advised Republic Bank that it would be "responsible for all damages incurred by the debtor resulting from the wrongful retention of possession by Republic Bank, including but not limited to the payment of attorney's fees and costs." *Id.*, p. 35. The Trustee testified that the lease expired on September 30, 2012, that Republic Bank stopped paying rent on that date, did not ask permission to remain on the Property and did not make any attempt to pay rent as a holdover tenant. *Id.*, pp. 33, 35.

The Trustee testified that, in response to the adversary proceeding, he filed an answer and counterclaim for breach of the lease and, in December 2012, sent a landlord's 5-day notice. *Id.*, p. 36. Republic Bank did not pay any amount at the expiration of the notice, did not yield possession and did not seek permission to stay in the Property, but did file a motion for a TRO in the bankruptcy court to prevent the Trustee from going forward with any kind of forcible entry or detainer action. *Id.*, pp. 36-37.

The Trustee testified that, after the Court issued its ruling on summary judgment, on May 12, 2014, he served another landlord's five-day notice demanding

that Republic Bank either pay all rent due under the lease or vacate the premises. Trial Transcript, Volume 1 [121], pp. 37-38. At the expiration of the five day period, Republic Bank did not pay the full amount of rent demanded, did not seek permission to remain in the Property and did not yield possession of the Property. *Id.*, p. 39. The Trustee testified that he sent another letter on May 20, 2014, demanding that Republic Bank yield possession of the Property; Republic Bank refused. *Id.*, p. 40. The Trustee testified that he then filed a motion seeking leave to amend his counterclaim to add a claim for breach of contract and a claim for possession. *Id.*, pp. 40-41. Republic Bank moved to dismiss the amended counterclaim, and that motion was denied. *Id.*, p. 41.

The Trustee testified that, after the Court ordered Republic Bank to pay reasonable use and occupancy, and after the parties agreed as to the amount of the reasonable use and occupancy, Republic Bank paid the estate a total of $520,000, which represented rental payments retroactive to October 1, 2012. Trial Transcript, Volume 1 [121], p. 43. Other than the use and occupancy payments, Republic Bank did not pay anything. *Id.*

The Trustee testified that Republic Bank answered the counterclaim on September 5, 2014, and, for the first time, raised the issue of having to provide notice before closing the bank and vacating the Property. *Id.*, pp. 44-45. An attachment to Republic Bank's answer indicates that Republic Bank's Board of Directors approved the closing of the 5700 North Central Avenue branch at a special meeting on July 24, 2014, and notified the Illinois Department of Financial

and Professional Regulation via letter dated August 6, 2014 of its intent to close the branch. Republic Bank sent a similar letter that same day to the FDIC. Desmond testified that Republic Bank never advised the Trustee of its intent to close, of the special meeting approving the closing or of the notice it sent to the FDIC and the State. *Id.*, pp. 46-47. Nor did Republic Bank ever seek permission from the Trustee to remain in the Property during the 90-day notice period. *Id.*, p. 47.

The Trustee also testified that, despite efforts, he was not able to sell the Property, and that, as a result, the estate incurred damages, which it is seeking to recoup. *Id.*, p. 48. First, he testified, the estate is seeking to recover from Republic Bank the interest that the estate is liable for during the period when Republic Bank wrongfully withheld possession of the Property (interest on the mortgage held by Delta Trading Company). *Id.*, p. 49. In this regard, the Trustee testified that when Delta Trading filed its proof of claim, he reviewed the proof of claim, the loan documents attached to it, including the mortgage note, the calculation by the lender of the amount of principal, interest, attorney's fees and costs and the cross-collateralization documents (including documents relating to the sale of other properties serving as additional collateral on the Delta note and the amounts paid to Delta as a result of those sales). *Id.*, pp. 53-54. The Trustee testified that Delta asserted a claim against the bankruptcy estate for interest and attorney's fees under the mortgage and note, and that he, in turn, is seeking to recover those same amounts from Republic Bank in this proceeding. He testified that, pursuant to the contract the debtor entered into with Delta Trading (or with M&I Bank at the time),

the debtor was required to reimburse the bank for its attorney's fees and agreed to pay interest under the loan documents. *Id.*, p. 68. He testified that Trustee's Exhibit 48 (a demonstrative exhibit) accurately depicts the calculation he performed concerning Delta's loan balance.

With regard to damages, the Trustee testified that he prepared Exhibit 41 (another demonstrative exhibit), which was a calculation of damages that he initially prepared in connection with the settlement conference held before the Magistrate Judge and then updated over time as additional expenses were incurred. Trial Transcript, Volume 1 [121], pp. 73-74. The Trustee testified that he was seeking several particular categories of damages, including contract damages (rent, real estate taxes, repairs and maintenance, utilities), *id.*, pp. 77-103; attorneys' fees and costs charged by the Trustee's law firm, Figliulo & Silverman, *id.*, pp. 104, 106-123, 127-129; attorneys' fees and costs charged by Delta Trading's attorneys, Robbins, Salomon & Pratt, *id.*, p. 123; and expert fees incurred by the Trustee in connection with the Republic Bank litigation, *id.*, pp. 123-125.

With respect to rent, the Trustee testified that he determined the damages by calculating the monthly rental amount when the lease expired, which was $26,095.46, and multiplying that over the period from October 2012 through November 2014, then subtracting what Republic Bank had already paid in use and occupancy ($520,000), for a total of $158,000. *Id.*, pp. 74-77.

With regard to the real estate taxes, the Trustee testified that, consistent with the lease, which required the tenant to pay real estate taxes, he was seeking as

damages from Republic Bank for prorated 2014 taxes in the amount of $45,070.53 because Republic Bank occupied the Property for 11 months in 2014. *Id.*, pp. 77-81. The Trustee also introduced as evidence the 2014 real estate tax bill (Exhibit 28) and proof of payment for the taxes (Exhibits 26, 27).

With regard to repairs and maintenance, the Trustee testified that, under the lease, Republic Bank was required to maintain the Property and pay for all repairs and maintenance while in possession. *Id.*, p. 81. He testified that, after Republic Bank vacated, he inspected the Property with Dan Hyman, the property manager, and they observed that the Property had not been repaired; among other things, the roof was leaking and the walls were damaged. *Id.* The Trustee testified that he authorized Hyman to solicit bids from contractors to perform the necessary repairs. *Id.* The Trustee testified that, based upon the bids he and his property manager solicited, he determined that the following repair and maintenance costs were necessary on the Property: roof repairs in the amount of $12,500; metal coping work in the amount of $3,310; mold remediation in the amount of $2,500; and wall repair work in the amount of $8,775. Transcript of Proceedings of October 26, 2015, pp. 90 (roof), 93 (metal coping), 95-97 (mold), 98 (walls); Exhibit 41. The Trustee testified that the amounts listed on Exhibit 41 under the repairs and maintenance heading were estimates, not actual monies outlaid for repairs. *Id.*, pp. 82-83.

In addition, the Trustee testified that he was seeking as damages reimbursement for having to pay an electric bill for the Property in December 2014 for $1,717.53; the bill covered the period ending November 24, 2014. *Id.*, pp. 99-100.

The Trustee also testified that he was seeking as damages the attorneys' fees that the estate incurred in connection with the Republic Bank adversary proceeding. The Trustee testified that he filed three interim fee applications seeking to recover fees paid to Figliulo & Silverman in connection with the litigation in the district court; those fee applications were allowed and paid by the estate. In addition, the Trustee testified that he is seeking to recover as damages the attorneys' fees and costs Delta incurred in defending against Republic Bank's adversary proceeding because those fees and costs are part of Delta's proof of claim and because, under the mortgage, Delta is entitled to recover those sums from the estate. The Trustee testified that, as of the time of the trial, the total fees incurred by Delta were $76,798.98. *Id.*, p. 123

The Trustee testified that he was also seeking to recover as damages the $4,500 the estate paid to Susan Enright, the expert appraiser retained in connection with the proceedings relating to the use and occupancy amount. *Id.*, pp. 123-125

The Trustee also testified that he was seeking additional interest that the estate incurred with respect to the note to Delta Trading for the period of time that Republic Bank wrongfully withheld possession of the Property, explaining that Delta was entitled to interest on the unpaid balance. *Id.*, pp. 132-33, 136. The Trustee testified that he calculated the amount of interest due Delta by using a rate of 5.098%, which was 2.40% over and above the 30-day LIBOR rate, and an unpaid loan balance of $2.1 million. *Id.*, p. 132. On cross examination, the Trustee testified that he used a constant rate of interest, whereas the note required the rate of

interest to adjust every 30 days; he testified that his calculation yielded a more conservative interest estimate and that his damages calculation as to this component would have been higher if he had used the floating rate. *Id.*, pp. 138-139.

Additionally, when asked on cross examination whether Delta's attorneys' fees have been assessed by the bankruptcy court against the estate, the Trustee testified that they had not. He testified, however, that Delta filed a proof of claim seeking attorney's fees, costs and interest, and that no objection to the claim had been made. *Id.*, pp. 140-41. The Trustee also testified that Delta's claim for post-petition interest on the mortgage debt was included in Delta's proof of claim, but it had not yet been resolved by the bankruptcy court. *Id.,* p. 142. He testified, however, that no objections had been filed to Delta's proof of claim. *Id.*, p. 142.

The Trustee then called Richard Fimoff, counsel for Delta Trading, to the stand. Fimoff testified that he and his firm were retained initially by M&I at the inception of the Chapter 11 case in 2009. Trial Transcript, Volume 1 [121], p. 188. He testified that, at that time, M&I held a mortgage against approximately 11 properties owned by R&G Properties, for a total indebtedness of almost $9 million. *Id.*, p. 188. Delta Trading acquired the loan that was original owned by M&I, *id.*, p. 189, and then Fimoff filed a proof of claim on behalf of M&I in the R&G bankruptcy case. Fimoff testified that the proof of claim is true and correct to the best of his knowledge, and that he determined the amount of the proof of claim by obtaining the principal amount from the client, computing additional charges based on the

16

costs incurred by the client, determining the interest rates and per diems, and then performing the necessary calculations. *Id., p.* 193. Fimoff testified that, when he did the initial calculation in 2010, the principal balance of the note was $8,027,540. *Id.* He testified that M&I Bank has also advanced $409,521 in real estate taxes on the 11 properties included in the note. *Id.,* pp. 193-94. Fimoff also testified that the proof of claim included interest, which he calculated based on the floating rate provided in the note (which was LIBOR plus 2.4 percent). *Id.,* pp. 194-95. Fimoff also testified that, because the loan was in default prior to R&G Properties' filing of the bankruptcy case, he included interest at the default rate as provided in the note, which was 3% in excess of the contract rate. *Id.,* p. 195. He testified that the proof of claim also included $120,000 in late fees, back charges, legal fees and costs, which were provided to him by the client. *Id.,* p. 195. Fimoff testified that the loan documents expressly provided that the lender could recover its legal fees when incurred in connection with defending or enforcing the obligations. *Id.,* p. 196. Specifically, the note included a provision relating to foreclosure and legal proceedings that required the mortgagor to "pay all costs and attorney's fees incurred or paid by the bank in any legal proceedings in which it may be a party or interested person by reason of being a party to this mortgage note." *Id.,* pp. 196-97. Fimoff testified that the mortgagor in this case was R&G. *Id.,* p. 197.

Fimoff testified that, as of November 12, 2015, no party had filed an objection to M&I's proof of claim. Transcript of Proceedings of November 12, 2015 (Trial Transcript, Volume 2) [122], p. 207. He further testified that the amount reflected

in the proof of claim, $8,894,235.03, included pre-petition amounts for the loan balance, interest, attorney's fees and costs, etc. *Id.*, p. 207. Fimoff testified that Delta, who is now the holder of the note and mortgage, also asserts additional claims against the bankruptcy estate which are not reflected in the proof of claim because they accrued after the petition was filed. *Id.*, p. 208.

Fimoff testified that, on August 4, 2010, he filed a transfer of claim with the bankruptcy court, advising that M&I's claim had been transferred to Delta Trading Company. *Id.*, p. 209. That notice is reflected in Trustee's Exhibit 30. Fimoff testified that notice of the transfer was provided to all interested parties in the bankruptcy case, and no one objected to the transfer. *Id.*, p. 210.

With regard to the adversary proceeding initiated by Republic Bank, Fimoff testified his client, Delta Trading Company, was named as a party in the lawsuit. *Id.*, p. 211. Fimoff testified that the loan from M&I to R&G Properties was secured by mortgages on a number of properties, including the 5700 North Central Property. *Id.*, p. 212. In its complaint, Republic Bank was seeking to exercise an option which would have had the effect of subordinating the mortgage held by Delta. *Id.*, p. 213. Fimoff further testified that he and his firm charged Delta approximately $69,000 in legal fees and approximately $6,000 or $7,000 in expenses to defend Delta in the Republic Bank adversary proceeding. *Id.*, p. 215. Fimoff testified that, in connection with this proceeding, he prepared an affidavit detailing the legal fees and expenses incurred by Delta in connection with the defense of this case, which is Trustee's Exhibit 10. That exhibit reflects total fees charged to Delta

in the amount of $69,491.50 and total expenses in the amount of $7,307.48. *Id.*, pp. 222-23. Fimoff testified that Delta Trading Company paid these fees and costs, and that Delta was now seeking to hold the bankruptcy estate of R&G Properties liable for the attorney's fees and costs that were charged to Delta by Fimoff's firm in connection with the Republic Bank adversary proceeding. *Id.*, pp. 224-225. He testified that the mortgage note requires the mortgagor to pay those expenses incurred by the mortgagee, and that Delta is simply enforcing its rights under the mortgage note. *Id.*, p. 226. Fimoff testified that, to this end, Delta plans to amend the proof of claim to add these additional expenses for fees and costs incurred in connection with the Republic Bank adversary proceeding. *Id.*, p. 228.

On cross-examination by counsel for Republic Bank, Fimoff admitted that only an unsecured creditor is entitled to post-petition interest. *Id.*, p. 232. He testified that the amount of the proof of claim was $8,894,235.03, and that the value of the collateral for the M&I (and then Delta) mortgage was $9,615,000.00. *Id.*, pp. 247, 250. Fimoff testified that this total was for all 11 properties that were encumbered by Delta's mortgage. *Id.*, p. 261.

Fimoff also admitted that he has not filed an amended proof of claim on behalf of Delta; he testified that he is waiting for the matter to be finally concluded. *Id.*, p. 246. Fimoff testified that Delta still had ongoing matters (beside the Republic Bank adversary proceeding) for which attorney's fees were being incurred and which Delta would seek to charge to the estate and that, once finalized, Delta would be asking the bankruptcy court to determine all of that via the proof of claim.

*Id.*, pp. 246-47. Fimoff testified that, as far as he knows, the bankruptcy court has not yet set any deadline for the filing of any amended proofs of claim. *Id.*, p. 258.

Fimoff testified that Delta is asserting that the rents collected on the 5700 North Central Property are its cash collateral and that Delta has an interest in those rents and in the use and occupancy payments that Republic Bank was ordered to pay. *Id.* at 257.

After Fimoff, the Trustee called Susan Enright to the stand. Enright testified that she is the owner, partner and appraiser at Appraisal Associates, a real estate appraisal and consulting firm. Transcript of Proceedings of November 12, 2015 (Trial Transcript, Volume 2), p. 263. She testified that, in the context of the Republic Bank adversary proceeding, she was hired to prepare a rental analysis and also gave a deposition in the case. *Id.*, p. 264. She testified that she submitted two invoices to the Trustee – one for $2,550 for the market rent analysis she performed, and another for $2,000 to cover costs related to her deposition in this matter. *Id.*, pp. 266-67. She testified that the Trustee paid both invoices. *Id.*, p. 267.

Finally, the Trustee called to the stand Daniel Hyman, the owner and operator of Millenium Properties, a commercial real estate business that brokers and manages properties. Hyman testified that he was hired by the bankruptcy estate to manage properties on behalf of the Trustee. Trial Transcript, Volume 2 [122], p. 271. He testified that he was retained as property manager in July 2012. *Id.* Hyman testified that, in November 2012, he was also asked to serve as a realtor for the estate, to sell certain properties. *Id.*, p. 271.

Hyman testified that the R&G estate at one point owned 33 properties, and that, as property manager, he was charged with interfacing with tenants, collecting rents, ensuring that obligations under the lease were met, providing reports on the properties and maintaining the properties according to the terms of the governing leases. *Id.*, p. 272. He testified that the amount of work and services involved in managing any given property depended on the type of property and the lease involved. *Id.*, pp. 272-73.

Hyman testified that the Property is a 32,000 square foot parcel, which includes a one-story building with about 8,250 square feet on the first floor and roughly the same amount on a lower level, plus a drive-through and a parking lot. *Id.*, pp. 273-74. The Property is located on the northwest side of Chicago and was occupied, when he was retained, by Republic Bank. *Id.*, p. 274. Hyman testified that, under the lease for the Property, Republic Bank was responsible for repairs and maintenance. *Id.*, p. 275. He testified that, as a result, he was not providing maintenance or repair services on the Property. *Id.*, p. 276. Hyman testified that his company collected two months of rent from Republic Bank, in August and September 2012, but received no rent from Republic Bank after that time. *Id.*, p. 277.

Hyman testified that Republic Bank vacated the Property at the end of November of 2014, and that he has continued to manage the Property since that time. *Id.*, p. 276. Hyman also testified that he listed the Property for sale in November of 2012 with an asking price of $2.8 million. *Id.*, p. 278. He testified

that, as of the date of the trial, the Property was still listed for that amount and had not been sold. *Id.*

Hyman testified that, after Republic Bank vacated the Property, he did a walk-through inspection in January 2015 and took pictures. *Id.*, p. 282. He testified that he took pictures of the ceiling tiles, which were water stained in various spots; Hyman testified that he had visited the Property previously and could not recall whether the ceiling tiles were stained at that time. *Id.*, pp. 283-85. Hyman determined that, based upon the amount and pattern of leakage, the water staining resulted from leaks in the roof. *Id.*, pp. 286-87. Hyman also testified that there were several spots where there was mold, as well as water damage. *Id.*, p. 288.

Hyman testified that he secured several estimates for roof repairs, including one from Ramirez Roofing (Trustee's Exhibit 24). The Ramirez bid was for $12,500. *Id.*, p. 293. Hyman testified that he also obtained inspections and estimates and received bids from Active Roofing for metal coping replacement in the amount of $3,310, and from 911 Restoration of Chicago for mold remediation in the amount of $2,519.87. *Id.*, pp. 295, 297. Hyman further testified that he obtained an inspection, estimate and bid for wall repair from Building Horizons, Inc. in the amount of $9,425. *Id.*, pp. 298, 300.

Hyman testified that none of this work was performed and that the Trustee would not approve it because of the ongoing litigation. *Id.*, pp. 300-01. Hyman testified that he did get some patching work done on the roof, but the patching is

not a permanent fix.  *Id.*, p. 301.  Hyman also testified that the Property is now in foreclosure and he has been appointed as the receiver.  *Id.*, p. 301.

Hyman testified that he did not know the condition of the Property, interior or exterior, when Republic Bank took possession on April 23, 2010.  *Id.,* p. 304.  He testified that, in his opinion, the mold that was present came after Republic Bank took possession of the Property.  *Id.*, p. 310.  Hyman testified that none of the repairs covered in the various bids has been done.  He testified that it is possible to market Property in an "as is" condition, but doing so means the seller or landlord has to factor in the "cost to repair the property and put it into a condition that's operable."  *Id.*, p. 311.  Hyman testified that, under the lease, Republic Bank was required to maintain the Property and, based on his observations from his inspection of the Property, when Republic Bank vacated the Property, there were "areas that needed to be repaired."  *Id.*, p. 318.  Specifically, there were stained ceiling tiles throughout the first floor of the Property, and there was water damage to the ceiling tiles and walls.  *Id.*, p. 318.  Hyman testified that it seemed illogical to him that Republic Bank would have taken the Property in that condition and that the damage likely occurred during the time Republic Bank was in possession of the Property.  *Id.*, pp. 318-19.

Following Hyman's testimony, the Trustee rested.

For its part, Republic Bank called its executive vice president, Robert Charal. Charal testified that, as executive vice president, he handles mergers and acquisitions, loan approvals, complicated loan workouts, complicated litigation and

other legal matters. Trial Transcript, Volume 2 [122], p. 325. Charal testified that he also serves as chief operating officer of Intercontinental Real Estate and Development Corporation, an affiliate of Republic Bank that serves as a real estate property manager. *Id.*, p. 325.

Charal testified that Republic Bank took possession of the 5700 North Central Property on April 23, 2010, when it acquired the deposits of Citizens Bank & Trust, and began operating a banking facility there. *Id.*, p. 326. He testified that he was on site at the Property within a day or two after Republic Bank took possession. *Id.*, p. 326. He did a walk-through of the Property to perform a visual inspection and noted that the Property was structurally in good shape but had "deferred maintenance issues": the Property needed new paint and new carpet and browned ceiling tiles needed to be replaced. *Id.*, p. 327. Charal testified that Republic Bank made at least two repairs to the roof in November 2011, and again in November 2012. *Id.*, p. 336.

Charal testified that Republic Bank disputes the Trustee's claimed entitlement to any rent or use and occupancy over and above the $520,000 Republic Bank already paid. *Id.*, p. 328. He testified that Republic Bank also disputes the Trustee's right to recover any attorney's fees or interest claimed by Delta Trading. *Id.*, p. 328. Charal testified that, in his view, the stipulation between Republic Bank and the Trustee concerning use and occupancy resolved the rent question and precluded the Trustee from seeking any additional amounts in rent. *Id.*, pp. 329-30.

Charal testified that Republic Bank paid all general real estate taxes during its period of possession of the Property, and that Republic Bank began paying the taxes when it took possession in 2010 and paid them until it vacated. *Id.*, p. 333.

Charal testified that, during the 2012-2014 time period, Republic Bank operated approximately 17 branches, and tried to keep them looking as nice as it could. *Id.*, p. 335. He testified that the bank's senior vice president in charge of facilities management, Chris Gerrib, and the bank's property management company, Intercontinental, took care of the day-to-day upkeep of the properties. *Id.*, pp. 335-36.

Charal testified that, after the Court granted the Trustee's motion for summary judgment, Republic Bank directed its attorneys to move for reconsideration and to begin exploring options for settlement with the Trustee or for finding a new branch location for the bank. *Id.*, pp. 337-38. Additionally, in July 2014, Republic Bank's board of directors held a meeting to pass a resolution to close the branch; the bank then submitted notice to the FDIC as required by the applicable banking laws and regulations. *Id.*, p. 339. Charal testified that notice to the FDIC was sent on August 6, 2014. *Id.*, p. 341; Defendant's Exhibit 5. He testified that notice was also given to the bank's customers around that same time period. Trial Transcript, Volume 2 [122], p. 342.

On cross-examination Charal testified that, when Republic Bank took possession of the Property, some of the ceiling tiles were stained, so the bank replaced them with clean tiles. *Id.*, p. 347. Charal testified that he did not know

whether any of the staining and mold depicted in the Trustee's site photos was present when the bank took possession of the Property. *Id.*, p. 348. He testified that the staining and mold may have occurred after the bank vacated the Property. *Id.*, p. 349. Looking at the pictures in Exhibit 32 showing dark mold stains, Charal admitted that he did not see anything like that when he did his initial walk through of the Property after Republic Bank took possession. *Id.*, p. 350.

Charal testified that Republic Bank received the Trustee's May 12, 2014 Five Days' Notice around the time it was sent and that, in response, Republic Bank did not vacate the Property, did not pay rent, did not seek permission from the Trustee to remain in the Property *Id.*, p. 357. He testified that the bank similarly received the Trustee's May 20, 2014 demand for possession on or about the date it was issued, and he conceded that, despite the demand, the bank did not yield possession as requested and did not seek permission to stay in the Property. *Id.*, pp. 357-58. He testified that the bank did, however, begin taking steps to make sure it could yield the Property as soon as was reasonably practical. *Id.*, p. 358. When pressed, Charal conceded that, in May 2014, Republic Bank had the Trustee's Five Days' Notice and demand for possession and had no legal authority to stay in possession of the Property, yet refused to vacate the Property until November 30, 2014. *Id.*, pp. 360-61.

Following Charal's testimony, the parties delivered closing arguments and then submitted proposed findings of fact and conclusions of law.

III.    Discussion & Analysis

The claims in this adversary proceeding are core proceedings under 28 U.S.C. § 157(b)(2). This Court has jurisdiction to hear this adversary proceeding pursuant to an order withdrawing the reference pursuant to 28 U.S.C. § 157(d) [14]. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The Trustee's Amended Verified Counterclaim initially included three claims, but Count II, seeking judgment of possession, was dismissed as moot after Republic Bank vacated the Property. Counts I and III (alleging respectively breach of the lease and willful holdover in violation of 735 ILCS 5/9-202) remained for trial and are resolved below.

A.    Breach of the Lease

To win on Count I, the Trustee must prove: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages. *E.g., Blankenship v. Pushpin Holdings, LLC*, No. 14 C 6636, 2015 WL 5895416, at *12 (N.D. Ill. Oct. 6, 2015); *Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2010 WL 1655089, at *11 (N.D. Ill. Apr. 22, 2010). It is undisputed that the lease constituted a valid and enforceable contract. Indeed, Republic Bank admitted in its answer that "[t]he Lease is a valid and enforceable contract between the Trustee and Republic Bank supported by consideration and containing definite and certain terms." Trustee Exhibit 2, Answer [49], ¶11. There is no allegation that the Trustee in any way failed to perform his obligations under the terms of the lease, and the evidence shows that

the Lessor (and then the Trustee) performed its obligations under the lease. Republic Bank disputes that it breached the lease and disputes the Trustee's claim of damages. The evidence, however, shows that Republic Bank breached the lease and that the Trustee suffered damages as a result.

### 1. Republic Bank's Breach of the Lease

The lease required lessee to pay lessor "as rent for the Premises the sums stated above, monthly in advance, until termination of this lease." Trustee's Exhibit 4 (Lease), Section 1. The monthly rent stated on the face of the lease is $20,000 – the monthly rental rate in effect at the time the lease was executed. *Id.* It is undisputed, however, that: (1) under the lease, the monthly rental rate was subject to an annual 3% increase (in fact, the rental rate had increased over the term of the lease); and (2) during the final year of the lease term, Republic Bank was obligated to pay base rent in the amount of $26,095.46 per month. Trustee's Exhibit 2 (Republic Bank's Answer to Trustee's Amended Verified Counterclaim [49]), ¶¶4-5.

The lease further required that, at the "termination of the term of the lease, by lapse of time or otherwise, Lessee will yield up immediate possession of the Premises to lessor, in good condition and repair, loss by fire and ordinary wear excepted, and will return the keys therefor to Lessor at the place of payment of rent." Trustee's Exhibit 4 (Lease), §12. Section 12 further provides:

> If Lessee retains possession of the Premises or any part thereof after the termination of the term by lapse of time or otherwise, then Lessor may at its option within thirty days after termination of the term serve written notice upon Lessee that such holding over constitutes either (a)

renewal of this lease for one year, and from year to year thereafter, at double the rental (computed on an annual basis) specified in Section 1, or (b) creation of a month to month tenancy, upon the terms of this lease except at double the monthly rental specified in Section 1, or (c) creation of a tenancy at sufferance at a rental of 150.00 dollars per day for the time Lessee remains in possession.  If no such written notice is served then a tenancy at sufferance with rental as stated at (c) shall have been created.  Lessee shall also pay to Lessor all damages sustained by Lessor resulting from retention of possession by Lessee. The provisions of this paragraph shall not constitute a waiver by Lessor of any right of re-entry as hereinafter set forth; nor shall receipt of any rent or any other act in apparent affirmance of tenancy operate as a waiver o the right to terminate this lease for a breach of any of the covenants herein.

*Id.*

With regard to repairs and maintenance, the lease provides as follows:

Lessee shall keep the Premises and appurtenances thereto in a clean, sightly and healthy condition, and in good repair, all according to the statutes and ordinances in such cases made and provided, and the directions of public officers thereunto duly authorized, all at his own expense, and shall yield the same back to Lessor upon the termination of this lease, whether such termination shall occur by expiration of the term, or in any other manner whatsoever, in the same condition of cleanliness, repair and sightlines as at the date of the execution hereof, loss by fire and reasonable wear and tear excepted.  Lessee shall make all necessary repairs and renewals upon Premises and replace broken globes, glass and fixtures with material of the same size and quality as that broken and shall insure all glass in windows and doors of the Premises at his own expense.  If, however, the Premises shall not thus be kept in good repair and in a clean, sightly and healthy condition by Lessee, as aforesaid, Lessor may enter the same, himself or by his agents, servants or employees without such entering causing or constituting a termination of this lease or an interference with the possession of the Premises by Lessee, and Lessor may replace the same in the same condition of repair, sightlines, healthiness and cleanliness as existed at the date of execution hereof, and Lessee agrees to pay Lessor, in addition to the rent hereby reserved, the expenses of Lessor in thus replacing the Premises in that condition.  Lessee shall not cause or permit any waste, misuse or neglect of the water, or of the water, gas or electric fixtures.

Trustee's Exhibit 4 (Lease), ¶6.

Finally, the lease required Lessee to "pay, in addition to the rent specified above, all water rents, gas and electric light and power bills taxed, levied or charged on the Premises, for and during the time for which this lease is granted and in case said water rents and bills for gas, electric light and power, shall not be paid when due, Lessor shall have the right to pay the same, which amounts so paid, together with any sums paid by Lessor to keep the Premises in a clean and healthy conditions, as herein specified, are declared to be so much additional rent and payable with the installment of rent next due thereafter." Trustee's Exhibit 4 (Lease), §2.

It is undisputed that Republic Bank took possession of the Property beginning April 23, 2010, and that it paid rent, at the stated monthly rate, from April 23, 2010 through September 30, 2012. *See, e.g.,* Trustee's Exhibit 3 (Parties' Stipulation of Uncontested Facts), ¶¶27-28. On September 19, 2012, the Trustee notified Republic Bank that he believed the Purchase Option to be invalid and that he expected Republic Bank to vacate and immediately surrender possession of the Property at the expiration of the lease term on September 30, 2012. Trustee's Exhibit 3, Stipulation of Uncontested Facts, ¶34 and Exhibit 8 (September 19, 2012 Letter from Michael K. Desmond, Trustee to Edward P. Freud, counsel for Republic Bank). The lease expired by its own terms on September 30, 2012. Trustee's Exhibit 2, Answer [49], ¶¶3, 7; Trustee's Exhibit 3, Joint Stipulation, ¶¶27, 31.

Thereafter, Republic Bank stopped paying rent, but retained possession of the Property.

On October 10, 2012, the Trustee advised Republic Bank that, under § 12(b) of the lease, he was electing to treat Republic Bank as:

> [A] holdover tenant on a month to month tenancy, at double the monthly base rent presently paid under the lease, or $52,190.92, plus utilities, real estate taxes, assessments and other charges under the lease. In addition, Republic Bank shall be responsible for all damages incurred by the Debtor resulting from the wrongful retention of possession by Republic Bank, including but not limited to the payment of attorney's fees and costs.

Trustee's Exhibit 3, Joint Stipulation, Exhibit 25 (October 10, 2012 Letter from Michael K. Desmond, Trustee to Edward P. Freud, counsel for Republic Bank). On December 6, 2012, Desmond issued a Landlord's Five Days' Notice to Republic Bank. Trustee's Exhibit 3, Stipulation, ¶35 and Exhibit 26 (Five Days' Notice dated December 6, 2012). The Notice advised Republic Bank that it then owed $150,000 in rent, that the Trustee was demanding such rent and that, if Republic Bank failed to pay the rent in full within 5 days, its right to possess the Property "on a month-to-month basis as a holdover tenant under the terms of the Lease at double the monthly rental specified in the Lease will be terminated." Trustee's Exhibit 3, Exhibit 26.

With regard to Republic Bank's breach, the evidence showed that Republic Bank breached the terms of the lease by failing to yield immediate possession of the Property upon expiration of the lease term on September 30, 2012, and by failing to pay any rent after that date. The evidence showed that, after the lease expired,

Republic Bank stopped paying rent and refused to surrender possession of the Property.

On April 21, 2014, the Court issued its decision granting the Trustee's motion for summary judgment regarding Republic Bank's adversary complaint, finding that the purchase option in the lease was non-assignable and thus, unavailable to Republic Bank. As Charal admitted at trial, certainly after this ruling, Republic Bank knew (as the lease stated all along) it had no legal right to remain in possession of the Property and knew (having received the Trustee's Five Days' Notice and demand for possession) that the Trustee wanted it out of the premises. Despite this, Republic Bank did not seek permission from the Court or the Trustee to remain in possession of the Property, and continued to refuse to pay any rent under the lease. By failing to pay rent under the lease, by remaining in possession of the Property and refusing to surrender possession, and by failing to pay rent as a holdover tenant pursuant to the Trustee's election, Republic Bank breached the lease in several material ways.

Republic Bank has consistently claimed and suggested that it had no obligation to pay rent because of its attempt to exercise the purchase option included in the original lease. But the Trustee advised Republic Bank at the outset – and certainly prior to the expiration of the lease – that the purchase option was not assignable and could not be exercised by Republic Bank. Indeed, the lease expressly provides that the option to purchase provided therein was "non-assignable." The Court rejects the notion that Republic Bank could have reasonably

believed, in fact, that it had any legal right to stay in possession of the Property –

especially without paying any rent – while the parties battled over Republic Bank's

attempt to exercise a right it clearly did not possess.

In addition to the breach stemming from Republic Bank's failure to pay rent

or to surrender possession of the Property, the Court finds that Republic Bank

breached the lease by failing – during the holdover period – to pay all water, gas

and electric charges and all property taxes assessed against the Property.

The Trustee also attempted to show at trial that Republic Bank breached the

lease by failing to maintain the Property and keep it in good condition and repair as

required under Section 6 of the lease.  The Court finds that the evidence on this

point, however, remained insufficient.  Section 6 required Lessee to "keep the

Premises and appurtenances herein in a clean, slightly and healthy condition, and

in good repair" and to "yield the same back to Lessor upon the termination of this

lease . . . in the same condition of cleanliness, repair and sightlines as at the date of

the execution hereof, loss by fire and reasonable wear and tear excepted."  Trustee's

Exhibit 4 (Lease), §6.  Although the Trustee introduced evidence showing that the

Property may not have been properly maintained or repaired in certain respects –

notably, photographs showing mold and water stains on ceiling tiles – the evidence

did not establish that the damage and disrepair occurred on Republic Bank's watch,

while Republic Bank was in possession of the Property.  Neither the Trustee nor

Hyman could say definitely that the damage was not present when Republic Bank

assumed possession of the Property.  And Charal testified that there was evidence

of water damage on ceiling tiles when the bank assumed possession; he specifically testified that the conditions reflected in the pictures may have existed when Republic Bank moved in and the Trustee offered nothing to rebut this evidence. As a result, the Court finds that the Trustee failed to prove this aspect of his claim.

2.      Damages

Turning to the remaining element of the Trustee's breach of contract claim, the Court finds that, as a result of Republic Bank's breaches as outlined above, the bankruptcy estate incurred damages that the Trustee is entitled to recover in this proceeding.  The Trustee argues that he is entitled to recover, on behalf of the estate, contract damages including rent, real estate taxes, utilities, repairs and maintenance, attorneys' fees and costs and interest.  The Court considers each category below.

(a)      Rent:

First, the Trustee is entitled to recover rent – more specifically, the difference between the rental rate specified in the lease and the use and occupancy rate ultimately paid by Republic Bank.  Section 12 of the lease provided that, if Republic Bank remained in possession after the expiration of the lease, the Trustee had the option of treating Republic Bank's holdover as: (1) a renewal of the lease for one year, at double the rental specified in the lease; (2) as creating a month-to-month tenancy, upon the terms of the lease, except at double the monthly rental specified in the lease; or (3) as creating a tenancy at sufferance at a rental of $150.00 per day

for the time Republic Bank remained in possession of the Property. Trustee's Exhibit 4 (Lease), §12.

Section 12 of the lease expressly obligated Republic Bank to yield up immediate possession of the Property to the Trustee at the end of the lease term. Trustee's Exhibit 4 (Lease), ¶12. Neither the Trustee nor Republic Bank renewed the lease, and it expired by its terms on September 30, 2012. At trial, the Trustee testified that he did not renew the lease, and that, even though Republic Bank initially indicated a desire to renew, the bank withdrew that offer and let the lease expire. Transcript of Proceedings of October 26, 2015 (Trial Transcript, Volume 1), p. 32, Desmond, as Trustee, also testified that, prior to the expiration of the lease, on September 19, 2012, he advised Republic Bank in writing that he expected it to vacate the Property and immediately surrender possession of the Property at the expiration of the lease term on September 30, 2012. Trustee's Exhibit 3 (Stipulation of Uncontested Facts), ¶34. Desmond testified that, when the lease expired, Republic Bank did not vacate and surrender the Property as requested; instead, it stopped paying rent but remained in possession of the Property. Transcript of Proceedings of October 26, 2015 (Trial Transcript, Volume 1), p. 33. Charal's testimony on the subject was consistent: Charal admitted that, despite Desmond's letter and notice, Republic Bank did not vacate the Property when the lease expired and that it stopped paying rent after the expiration date. Transcript of Proceedings of November 12, 2015 (Trial Transcript, Volume 2), p. 357.

When the lease expired by its terms on September 30, 2012, Republic Bank elected to remain in possession of the Property; at that time, the monthly rental rate specified in the lease was $26,095.46 per month. On October 10, 2012, the Trustee advised Republic Bank that, in light of its decision to remain in the Property, he was electing, under §12 of the lease, to treat Republic Bank as a holdover tenant on a month-to-month tenancy at double the monthly base rent presently provided for in the lease. Trustee's Exhibit 6 (October 10, 2012 letter from Michael K. Desmond, Trustee, to Edward P. Freud, counsel for Republic Bank). Following the Trustee's election, Republic Bank remained in possession of the Property, but stopped paying rent. Ultimately, in November 2014, Republic Bank paid $520,000 in fair use and occupancy, but the Trustee – consistent with Section 12 – is entitled to rental payments at the rate specified in the contract, which was $26,095.46. Thus, for Republic Bank's breach of the lease, the Trustee is entitled to recover the net difference between the fair use and occupancy rate and the specified rental rate, or $6,095.46, for each of the months it remained in possession of the Property after the expiration of the lease – that is, for the period beginning October 2012 and ending November 2014, for a total of $158,481.96.

In its April 21, 2014 ruling, the Court determined that the double the rent provision in §12 was an unenforceable penalty, but that the Trustee was "still entitled to see actual damages under that provision." Order dated August 11, 2014 [43], p. 5 (citing *Stride v. 120 W. Madison Bldg. Corp.*, 477 N.E.2d 1318, 1321 (Ill. App. Ct. 1985)). The difference in the specified rate of rent and the fair use and

occupancy rate are actual damages under §12, and thus, the Court's award today is therefore consistent with that prior ruling.

(b)   Taxes:

The Trustee is also entitled to recover the amount of the real estate taxes he paid for the period of time when Republic Bank occupied the Property. The lease provides as follows with respect to real estate taxes:

> Lessee shall pay to Lessor during the term, in addition to the rent specified herein, all taxes and assessments against the land, buildings or improvements that are levied or assessed by any lawful authority during each calendar year, including without limitation all personal property taxes of Lessor relating to Lessor's personal property used or useful in connection with the operation and maintenance of the Premises, and all other governmental charges, general and special, ordinary and extraordinary, foreseen as well as unforeseen, of any kind and nature whatsoever, or other tax, however described, which is levied or assessed by the United States of America or the state in which the Premises is located or any city, municipality or political subdivision thereof, against Lessor or all or any part of the premises and payable during the respective calendar year (such taxes and assessments being hereinafter called "Taxes"). Taxes for any partial calendar year during the term shall be prorated, based upon the portion of such calendar year which is within the term. Taxes shall be paid monthly, in advance, in equal installments, in an amount estimated by Lessor from time to time. Within a reasonable time after receipt of all final tax bills for any calendar year, Lessor shall furnish Lessee with a written statement of the actual amount of Taxes for such year. In the event the total amount of monthly installments paid by lessee pursuant to this Section 25 does not equal the sum due from Lessee as shown on such statement, then, in case of underpayment by Lessee, Lessee shall pay to Lessor any deficiency upon receipt of such statement, or, in case of overpayment by Lessee, Lessor shall credit Lessee's next monthly rental in the amount of any such overpayment (or refund to Lessee if overpayment has occurred during the final year of the lease), as the case may be. A copy of a tax bill submitted by Lessor to Lessee shall be sufficient evidence of the amount of Taxes to which such bill relates.

Trustee's Exhibit 4 (Lease), § 25.  At trial, the Trustee introduced evidence showing that the bankruptcy estate paid real estate taxes assessed against the Property for the year 2014, and that Republic Bank maintained possession of the Property during 11 of the 12 months in 2014.  Republic Bank argued that these taxes were billed after it vacated the Property and that it should, therefore, not be required to pay them.  But, as the evidence showed, although the bill was payable in 2015, it reflected taxes levied in 2014.  Thus, under Section 25, Republic Bank was obligated to pay these taxes.

According to the evidence adduced at trial, the total real estate taxes levied against the Property for the 2014 tax year, and paid by the bankruptcy estate, were $49,167.85.  Trustee's Exhibits 25, 26, 28; Trial Transcript, Volume 1 [121], pp. 77-81.  Because Republic Bank maintained possession of the Property through November 30, 2014 – for eleven of the twelve months of 2014, the bankruptcy estate is entitled to recover from Republic Bank $45,070.53, the prorated portion of the 2014 real estate taxes for that eleven month time period.

(c)     Utilities:

The lease also required Republic Bank, as lessee, to pay all utilities, including any electric expenses incurred while it was in possession of the Property.  Trustee Exhibit 4 (Lease), §2.  Pursuant to the Trustee's election to treat Republic Bank as a holdover tenant on a month-to-month tenancy, under §12, Republic Bank continued to be responsible for all electric charges while in possession of the Property.  The evidence showed that the bankruptcy estate paid a $1,717.53 electric

bill for the Property covering the billing period October 24, 2014 to November 21, 2014. Trial Transcript, Volume 2 [121], pp. 99-104; Trustee's Exhibit 8. The evidence also showed that Republic Bank was in possession of the Property during this period. As a result, pursuant to Section 2 of the lease, the Trustee is entitled to recover from Republic Bank the sum of $1,717.53 for electric charges paid by the estate.

(d)    <u>Repairs:</u>

Having determined that the Trustee failed to prove that Republic Bank breached its duty to repair and maintain the Property or to yield the Property in the same condition it received it, the Court need not spend much time on the evidence relating to the repair estimates. The Court notes, however, that the Trustee's proof of damages based upon failure to maintain and repair the Property was speculative. The Trustee introduced bid offers for several categories of repairs, but Hyman testified that none of the repairs was actually performed and that no money was spent on such repairs. Additionally, the evidence adduced at trial was speculative and too vague to allow the Court to conclude that the "bids" were reasonable, how they were calculated, or even that the damage existing on the Property as of January 2015 went beyond "ordinary wear and tear" and did not, in fact, exist when Republic Bank took possession of the Property. Hence, this Court awards no damages under this category.

(e)      <u>Attorneys' Fees and Costs</u>

The Trustee argues that he is entitled to recover attorneys' fees in the amount of $282,318.23 and costs in the amount of $4,550.00. The latter costs are associated with the Trustee's retention of Susan Enright of Appraisal Associates, the expert appraiser retained to assist in the setting of the subsequently stipulated to "fair use and occupancy" rate. The Trustee argues that he is entitled to recover attorneys' fees and costs under §15 of the lease. That section provides:

> Lessee shall pay upon demand all Lessor's costs, charges and expenses, including fees of attorneys, agents and others retained by Lessor, incurred in enforcing any of the obligations of Lessee under this lease or in any litigation, negotiation or transaction in which Lessor shall, without Lessor's fault, become involved through or on account of this lease.

Trustee's Exhibit 4 (Lease), §15.

As an initial matter, Republic Bank raised a standing objection to the admission of any evidence or argument concerning fees and costs, arguing that the Court lacked jurisdiction to make any determination in this regard. Republic Bank argued throughout these proceedings that the awarding of attorneys' fees is solely a part of the core proceeding in the bankruptcy case, and that the withdrawal of the reference did not give the Court jurisdiction to consider any request by the Trustee for attorneys' fees and costs.

The Court rejects this jurisdictional argument. The reference was withdrawn as to this adversary proceeding, which includes the resolution of the Trustee's counterclaim against Republic Bank. The Trustee is not seeking an award of fees from the estate here, but is seeking to recover, on behalf of the estate, the fees

40

incurred in defending against Republic Bank's claims and in enforcing the estate's rights under the lease. In this context, the fees and costs are exactly the same as the rent, taxes and utilities – that is, these are all categories of damages recoverable under the parties' contract. Significantly, Republic Bank raised no objection to the admission of evidence and argument concerning the Trustee's right to recover these other categories of damages. Accordingly, Republic Bank's standing objection was overruled, and the Court finds that it possesses jurisdiction to consider the Trustee's claim for all categories of damages under the lease – including attorneys' fees and costs.

To be recoverable under §15, however, the requested fees and costs must have been "incurred." *See Chicago Title & Trust Co. v. Southland Corp.*, 111 Ill.App.3d 67, 70, 443 N.E.2d 294, 297 (1st Dist.1982) (general contract construction rules apply to the construction of written leases in Illinois, and courts should give words their common and generally accepted meaning). Taking the expert-related costs first, the Court finds that the Trustee is entitled to recover these costs. The Trustee testified that, on behalf of the estate, he retained Enright as an expert in connection with the use and occupancy issue and that, in that regard, Enright prepared an expert report and was deposed. Trial Transcript, Volume 1 [121], p. 124. Desmond testified that, after preparing her report and sitting for deposition, Enright billed the estate for her services, and he, on behalf of the estate, paid those invoices. *Id.*, pp. 124-125. Given that these costs were incurred by the Trustee in connection with proceedings to enforce the Lessee's obligations under the lease and

in litigation involving this lease, the Court finds that the estate is entitled to recover them from Republic Bank under §15 of the lease.

The same is true with respect to the attorneys' fees *incurred* by the estate. At trial, Desmond testified that the bankruptcy court had approved various interim fee applications and that a portion of the fees approved were incurred in connection with the Republic Bank adversary proceeding. More specifically, the evidence showed that the first interim application, covering the period from October 10, 2012 through February 28, 2013, included $34,987.50 in fees billed to the estate for the Republic Bank adversary proceeding. Trial Transcript, Volume 1 [121], pp. 108-112; Trustee's Exhibit 13, pp. 106, 140-145. The bankruptcy court approved the Trustee's first interim application on April 24, 2013. Trustee's Exhibit 23.

The evidence showed that the second interim application, covering the period from March 1, 2013 through March 31, 2014, included $62,432.50 in fees billed to the estate for the Republic Bank adversary proceeding. Trial Transcript, Volume 1 [121], pp. 115-116; Trustee's Exhibit 14, pp. 171, 190-199. The bankruptcy court approved the Trustee's second interim application in full on July 9, 2014. Trustee's Exhibit 22.

And, finally, the evidence showed that the third interim application, covering the period from April 1, 2014 through December 31, 2014, included $63,135.00 in fees billed to the estate for the Republic Bank adversary proceeding. Trial Transcript, Volume 1 [121], pp. 118-119; Trustee's Exhibit 15, pp. 371-372, 385-397.

The bankruptcy court approved the Trustee's third interim application on June 17, 2015. Trustee's Exhibit 21; Trial Transcript, Volume 1 [121], pp. 120-121.

With respect to each of the interim applications, the fees approved by the bankruptcy court were paid to Figliulo & Silverman by the estate – they were, in short, incurred by the estate (the Lessor) in the enforcement of its rights and of Republic Bank's obligations under the lease. As such, they are recoverable under §15 of the lease. The Court finds that the estate is entitled to recover as damages in these proceedings the $160,555.00 in fees paid to Figliulo & Silverman.

The Trustee testified at trial that he was also seeking to recover the additional fees his firm has billed with respect to the adversary proceeding and the fees he will bill in connection with the trial. These fees have not been submitted to the bankruptcy court, have not been paid and have not yet been incurred by the estate. Only fees that have been incurred by the Lessor are recoverable under §15 of the lease. These fees were not "incurred" and are not recoverable.

The Trustee also seeks to recover as damages the attorneys' fees that Fimoff's firm has billed to Delta Trading Company in connection with the adversary proceeding. The Court finds that the Trustee is not entitled to recover these fees in this proceeding. Delta is the owner and holder of the first mortgage on the Property. Trustee's Ex. 2, Answer, ¶17. Republic Bank named Delta as a defendant in this adversary proceeding and sought to acquire the Property over the mortgage interests of Delta. As a result, Delta retained Richard Fimoff and the law firm of Robbins, Salomon and Patt, Ltd. to defend it in this adversary proceeding. Trial

Transcript, Volume 2 [122], pp. 211, 213; Trustee's Exhibit 10. Fimoff testified that Delta has incurred legal fees and costs defending this adversary proceeding totaling $76,798.98 through June 17, 2015. Trial Transcript, Volume 2 [122], pp. 222-224; Trustee's Exhibit 10.

But the fact that Delta has incurred attorneys' fees is irrelevant for purposes of § 15 of the lease. Even if the mortgage allows Delta to seek to recover its attorneys' fees from the Debtor, that fact does not mean that the estate can recover those fees from Republic Bank in this proceeding. Here, the right to recover fees springs from the contract – the lease. And Delta is not a party to the lease. Attorneys' fees are appropriately awarded in this proceeding only if they can fairly be awarded as contract damages under the lease. For that to happen, the fees must fall within the scope of §15 and Delta's fees do not.

The Trustee offered no evidence to show that the fees billed to Delta have been *incurred* by the estate. At trial, the Trustee testified that the estate has not yet paid anything to Delta or to its counsel in connection with the Republic Bank adversary proceeding. Although it is true that Delta Trading Company has filed a proof of claim in the bankruptcy case, that claim has not yet been allowed. More significantly, Delta's proof of claim, as presently drafted, does not include any of the fees claimed as damages in this proceeding. At trial, counsel for Delta indicated that he intends to amend his proof of claim. However a review of the docket in the bankruptcy case shows that, although Delta Trading Company filed a proof of claim in 2010, it has not amended the proof of claim to include any of these fees and costs.

Until Delta amends its proof of claim – and until those fees are assessed against the estate – any claim of damages on this basis is not yet ripe. After all, Delta is not the Lessor and has no right to reimbursement of attorneys' fees under the lease. Although at some point the estate may, in fact, incur fees and costs charged to Delta under the mortgage, it has not yet done so. Neither the Trustee nor the estate has paid Delta's counsel's bill. Given that §15 of the lease obligates Republic Bank to pay only those fees and costs that have been incurred, these damages are not recoverable at this time.

(f)     Interest

Finally, the Trustee seeks consequential damages from Republic Bank in the form of interest accruing on the loan balance attributable to the Property for the period from October 12, 2012 through November 30, 2014, during which time Republic Bank withheld possession of the Property from the Trustee. The Trustee argues that Republic Bank's failure and refusal to surrender possession of the Property, or to pay rent until it was ordered to do so by this Court, interfered with the Trustee's ability to sell the Property and use the proceeds to pay down the loan held by Delta. Trial Transcript, Volume 1 [121], pp. 47-49. The Trustee claims that the estate is therefore entitled to recover the additional interest expense it incurred, which he calculates is $232,007.88. The Trustee argued that the estate incurred interest charges because, as a result of Republic Bank's holdover, it was unable to sell the Property. But, at trial, Hyman and the Trustee both testified that they were unable to sell the Property even after Republic Bank vacated. Republic Bank

vacated the Property on November 30, 2014 and by the time of the trial – 11 months later – the estate still had no prospects. Because of this, the Trustee's claim for interest damages is speculative and not supported in the evidence.

      B.    <u>Willful Holdover</u>

In Count III of his amended counterclaim, the Trustee seeks damages for Republic Bank's "willful" holdover. *See* [23], ¶¶31-37. Under Illinois law,

> [i]f any tenant or any person who is in or comes into possession of any lands, tenements or hereditaments, by, from or under, or by collusion with the tenant, willfully holds over any lands, tenements or hereditaments, after the expiration of his or her term or terms, and after demand made in writing, for the possession thereof, by his or her landlord, or the person to whom the remainder or reversion of such lands, tenements or hereditaments belongs, the person so holding over, shall, for the time the landlord or rightful owner is so kept out of possession, pay to the person so kept out of possession, or his or her legal representatives, at the rate of double the yearly value of the lands, tenements or hereditaments so detailed to be recovered by a civil action.

735 ILCS 5/9-202. Section 9-202 "requires the payment of 'double the yearly value of the lands' only [for] tenants who are 'willfully holding over.'" *Wendy & William Spatz Charitable Found. v. 2263 N. Lincoln Corp.*, 998 N.E.2d 909, 924 (Ill. App. Ct. 2013)(quoting *J.M. Beals Enterprises, Inc. v. Industrial hard Chrome, Ltd.*, 648 N.E.2d 249, 259 (Ill. App. Ct. 1995); 735 ILCS 5/9-202). "[W]here a tenant remains in possession for colorably justifiable reasons, he should not be charged under the statute. In other words, following *Stuart v. Hamilton*, the tenant, to be liable under the statute, must know that his retention of possession is 'wrongful.'" *J.M. Beals Enterprises,* 648 N.E.2d at 252 (citing *Stuart v. Hamilton*, 66 Ill. 253, 255 (1872)).

*See also Rexam Beverage Can Co. v. Bolger*, No. 06 C 2234, 2008 WL 4087441, at *2 (N.D. Ill. Aug. 20, 2008).

Here, the Court finds that, at least after the Court issued its summary judgment ruling that Republic Bank had no right to exercise the purchase option, Republic Bank had no colorable justification for remaining in possession of the Property. Based upon the evidence presented at trial, the Court finds that, after April 21, 2014, Republic Bank was a willful holdover. To the extent Republic Bank believed that its perceived right to exercise the purchase option gave it "colorable justification" for remaining in possession of the Property, that justification was removed by the Court's decision.

Republic Bank has attempted in these proceedings to argue that certain FDIC and state restrictions on a bank's ability to shutter its doors at any given branch would have provided colorable justification for remaining in possession of the Property. But the Court rejects that argument for two reasons. First, the lease does not reflect any accommodation for such restrictions and Republic Bank never raised the issue with the Trustee or the Court. Second, Republic Bank knew for certain by April 21, 2014 that it had no right to remain in possession of the Property. If it were concerned about satisfying the restrictions and complying with its obligations to vacate possession of the Property, it should have and could have taken swift action; it did not. Republic Bank did not raise the issue with its Board of Directors until July 2014 – three months after the Court ruled definitively that it had no right to possession. And it waited another two weeks to provide the notices

to the FDIC and the Illinois Department of Financial and Professional Regulation; even then it did not set the closing date for a date 90 days out, but took its time vacating the Property. Republic Bank delayed in providing the requisite notice; the estate should not have to pay the price for that delay.

At trial, Robert Charal testified that Republic Bank received the Trustee's second Five Days' Notice on or about May 12, 2014 and that, after receiving it, Republic Bank neither paid the amounts demanded, nor surrendered possession of the Property. Transcript of Proceedings of November 12, 2015 (Trial Transcript, Volume 2), pp. 356-57. At that time, Republic Bank had remained in the Property for more than 20 months after the expiration of the lease without paying a dime. *Id.* at 357. Charal also testified that Republic Bank received the Trustee's demand for possession on or about May 20, 2014, and still refused to surrender possession at that time. *Id.*, pp. 357-58.

Charal testified that, after receiving the Trustee's demand for possession, Republic Bank "began taking steps to make sure we could yield the property as soon as was reasonably practical and in a way that wouldn't damage the trustee." *Id.*, p. 358. But the evidence belies the claim. Initially, the evidence shows that Republic Bank never communicated its intent to remain in possession of the Property and never communicated with the Trustee about the terms of its surrender of possession. Additionally, the day the Trustee served the demand for possession, Republic Bank filed a notice of motion seeking reconsideration of the Court's summary judgment ruling. See [21]. Republic Bank fought the Trustee on use and

occupancy, *see* [29], and moved to dismiss the Trustee's counterclaim [33]. Far from making things easy on the Trustee or worrying about the Trustee's being damaged, Republic Bank aggressively litigated this proceeding, all while remaining in possession of the Property rent free.

Even after Republic Bank admitted in its answer [49], filed September 5, 2014, that the Trustee was entitled to possession, it failed to vacate the Property with any sense of expediency. Instead, apparently rationalizing that certain FDIC and state regulations required it to stay in the Property until at least November 6, 2014, Republic Bank failed to vacate possession until November 30, 2014. But the regulations Republic Bank references do not convey a right or a duty to remain in the Property; rather, the statutes simply obligate Republic Bank to provide notice of the closure of its branch. *See* 12 U.S.C.A. §§1818, 1831r-1. Republic Bank could have (and should have) provided such notice long before it did. The fact that it waited does not excuse its obligations under the lease or the holdover statute. Nothing in the statute gives Republic Bank any right to remain in possession of the Property.

Additionally, despite Republic Bank's admission that the Trustee was entitled to possession of the Property pursuant to the Court's April 21, 2014 Order, Republic Bank made no effort to seek permission from either the Court or the Trustee to remain in the Property while it complied with its purported obligations to provide notice of its intent to close the bank branch pursuant to federal and state banking regulations. Transcript of Proceedings of November 12, 2015 (Trial

Transcript Volume 2), p. 358. Charal admitted at trial that, by May 2014, Republic Bank had in hand the Trustee's demand for possession and knew at that time that it had no right to possession. Yet, in bad-faith, Republic Bank did not surrender possession until November 30, 2014. *Id.*, pp. 360-61.

Based upon this evidence, the Court finds that Republic Bank's holding over in possession of the Property following the Court's April 21, 2014 ruling was willful and done without colorable justification. Accordingly, pursuant to 735 ILCS § 5/9-202, Republic Bank is obligated to pay to the Trustee "double the yearly value of the lands" for the period April 21, 2014 through November 30, 2014.

The appropriate measure of damages under Section 202 is the "fair net rental value of the property." *Rexam*, 620 F.3d at 730-34. In this case, in connection with the payment of use and occupancy by Republic Bank, the parties stipulated "that the fair and reasonable base rental value for the Property is $20,000 per month on a triple net basis and $240,000.00 on an annual basis." Agreed Joint Stipulation [56]. The parties further stipulated that the agreed-upon fair and reasonable base rental value applied "for any other dispute in this litigation where the issue of the fair rental value of the Property may arise." *Id.*, p. 3. Count III of the Amended Counterclaim is one such "other dispute." The Court, therefore, adopts the stipulated fair and reasonable base rental value of $20,000 as the fair net rental value of the Property for purposes of Section 202. As a result of its willful holdover in possession of the Property for the seven months and 9 days following the Court's April 21, 2014 ruling, Republic Bank would be obligated to pay statutory damages

in the amount of $292,000.  Having already paid use and occupancy, Republic Bank is liable to the estate for the balance, which is $146,000.

Conclusion

Based upon the findings of fact and conclusions of law set forth in this Memorandum Opinion and Order, the Court finds in favor of the Trustee and against Republic Bank on the Trustee's breach of contract claim (Count I) and holdover claim (Count III), and awards judgment in favor of the Trustee and against Republic Bank as follows: on Count I, in the amount of $370,375.02; and on Count III, in the amount of $146,000, for a total award of $516,375.02.  The Clerk is directed to enter judgment accordingly.

Dated:  May 31, 2016.

ENTERED:

_____

Judge John Robert Blakey
United States District Court