**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: R&G PROPERTIES, | ) Chapter 7 |
| | ) |
| Debtor. | ) Case No. 09 B 37463 |
| | ) |
| REPUBLIC BANK OF CHICAGO, | ) Honorable A. Benjamin Goldgar |
| | ) |
| Plaintiff, | ) Adv. No. 12-01491 |
| | ) |
| v. | ) |
| | ) |
| MICHAEL K. DESMOND, not individually but as Trustee, and DELTA TRADING COMPANY, INC., an Illinois corporation, | ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) Case No. 13-cv-06835 |
| MICHAEL K. DESMOND, not individually, but solely in his capacity as Chapter 7 Trustee, | ) ) Hon. John Robert Blakey ) Magistrate Judge Susan Cox |
| Defendant-Counterplaintiff, | ) |
| v. | ) |
| | ) |
| REPUBLIC BANK OF CHICAGO, | ) |
| | ) |
| Plaintiff-Counterdefendant. | ) |

**REPUBLIC BANK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR APPROVAL OF SUPERSEDEAS BOND FOR STAY PENDING APPEAL**

Plaintiff and Plaintiff-Counterdefendant Republic Bank of Chicago ("Republic"), by its counsel, hereby files its Memorandum of Law in Support of its Motion ("Motion") (Dkt. No. 129) for an Order approving a supersedeas bond and staying the Judgments.[1] In support of the Motion, Republic states as follows:

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

## INTRODUCTION

On June 8, 2016, Republic filed its Motion for Approval of Supersedeas Bond for Stay Pending Appeal. (Dkt. No. 129.) On June 13, 2016, Republic filed a notice of appeal of: (a) that certain interlocutory order ("Interlocutory Order") (Dkt. No. 16) entered on April 21, 2014 which resolved certain cross motions for summary judgment in favor of the Trustee by ruling that Republic could not enforce the Purchase Option for the real property which Republic obtained from the FDIC pursuant to the failure of Citizens Bank; and (b) related subsequent orders in the case including that certain: (i) interlocutory order ("Reconsideration Denial Order") (Dkt. No. 32) entered on June 9, 2014; (ii) interlocutory order ("Interim Order Awarding Use and Occupancy") (Dkt. No. 43) entered on August 11, 2014; (iii) interlocutory order ("Interim Order Fixing Amount of Use and Occupancy") (Dkt. No. 48) entered on September 4, 2014; (iv) interlocutory memorandum opinion and order ("Interlocutory Appeal Denial Order") (Dkt. No. 89) entered on July 17, 2015; (v) final Memorandum Opinion and Order ("Final Memorandum Opinion") (Dkt. No. 127) entered on May 31, 2016; and (vi) final money judgment in the amount of $516,375.02 ("Final Money Judgment") (Dkt. No. 128) entered on May 31, 2016.[2]

Through the Motion, Republic moves for a stay pending appeal and offers to post a bond in the amount of $550,000 to stay the $516,375.02 final money judgment and related rulings in favor of the Trustee. At the hearing on the Motion, the Trustee conceded that the proposed bond was sufficient to obtain a state of the Final Money Judgement. The Trustee also conceded that the ruling in favor of the Trustee holding that Republic could not enforce the Purchase Option

---

[2] Republic wishes to make this Court aware that on June 15, 2015, the Seventh Circuit entered an order questioning whether the Final Monday Judgment was final and appealable order and requesting briefing as to why the appeal should not be dismissed for lack of jurisdiction. *See* **Exhibit A**. Accordingly, it may be necessary for this Court to enter an amended final order setting forth "the full disposition of the case - who won and what they won as to the various claims of the parties."

(Dkt. No. 16) was not a money judgment.  Nevertheless, the Trustee objected to approval of the proposed bond, arguing that Republic should be required to increase the bond by $1.5 million Purchase Price in order to obtain a stay pending appeal.

The Trustee is incorrect for three reasons.  First, this Court can stay the ruling on the Interlocutory Order without any bond at all, because it is not a money judgment.  Second, the Court should stay the Interlocutory Order because Republic satisfies the required showing for stay pending appeal.  This is because Republic would be irreparably harmed without a stay and because the Trustee cannot make a showing of any harm.  Third, there is no scenario under which the Trustee is entitled to collect both the purchase price and the money judgment from Republic, and thus, his attempt to increase the amount of the bond has no merit whatsoever.  For each and all of these reasons, Republic respectfully submits that its Motion should be granted and the Trustee's attempt to demand an increase the amount of the bond should be rejected.

**ARGUMENT**

**I.    THE $550,000 BOND OFFERED BY REPUBLIC IS APPROPRIATE TO OBTAIN THE REQUESTED STAY AND NO ADDITIONAL SUM IS NECESSARY OR WARRANTED.**

Federal Rule of Appellate Procedure ("FRAP") 8 provides that a party must ordinarily move for a stay in the district court.  Bankruptcy Rule 7062(d) (which incorporates Federal Rule of Civil Procedure 62(d)) only requires the posting of a bond to secure a stay when there is a money judgment.  *See, e.g.*, *Donovan v. Fall River Foundry Co.*, 696 F.2d 524, 526 (7th Cir. 1982).  "The purpose of a supersedeas bond is to secure the prevailing party against any risk that the judgment debtor will no longer be able to meet its obligations pending appeal and to protect the prevailing party from any costs it incurs in foregoing execution of the judgment until the appeal is decided." *Preston v. Thompson*, 565 F. Supp. 310, 317 (N.D. Ill. 1983) (citations omitted).  Further, the provisions of Bankruptcy Rule 7062(c) applies to injunctions and other

3

injunctive-type orders which are not encompassed by the automatic stay provisions of Rule 7062(d). *Robbins v. Pepsi-Cola Metropolitan Bottling Co.*, 637 F.Supp. 1014, 1019 (N.D. Ill. 1986) (citing *Donovan v. Fall River Foundry Co.*, 696 F.2d at 526).

Here, Republic has offered to post a $550,000 bond, which exceeds the $516,375 unpaid money judgment in these proceedings. Trustee requests more, but he does not dispute the amount of the money judgment and he further concedes that the ruling on the Interlocutory Ruling is not a money judgment. Thus, Bankruptcy Rule 7062(c) applies. As such, Republic is not required to post any further bond to obtain a stay pending appeal. *Id.*; *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

## II. THE COURT SHOULD STAY THE RULING ON THE INTERLOCUTORY ORDER WITHOUT ANY FURTHER BOND PURSUANT TO BANKRUPTCY RULE 7062(C).

The Trustee's effort to increase the amount of the bond is also unwarranted pursuant to Bankruptcy Rule 7062(c). Republic has offered to post a bond for a sum in excess of the amount of the unpaid money judgment in these proceedings. The Trustee, thus, does not require any additional sum to protect the interests of the Estate pending appeal. The Trustee's arguments to the contrary ignore the fact that a *lis pendens* is not a lien and Delta has obtained relief from the bankruptcy automatic stay foreclosure on the real property. To the extent the Trustee raises the purported interests of Delta, his argument ignores that Delta has not obtained any order of foreclosure and thus does not hold title to the property. In fact, the Trustee and Delta concede that there are presently no interested buyers in the real property whatsoever.

By contrast, Republic would suffer substantial and irreparable harm if the stay is not granted. Republic's appellate rights, and thus its right to exercise the Purchase Option, are in jeopardy because entry of a foreclosure order by the state court stands to eviscerate Republic's purchase rights that will be an issue on appeal. *See Town of Libertyville v. Moran*, 535 N.E.2d

4

82 (Ill. App. Ct. 1989) (holding that the only way a plaintiff who files a *lis pendens* can protect its *lis pendens* on appeal is to obtain a stay of judgment); *see also Duncan v. Farm Credit Bank of St. Louis*, 940 F.2d 1099 (7th Cir. 1991) (finding that under Illinois law the protections of a *lis pendens* terminate upon entry of an adverse final judgment absent issuance of stay pending appeal). Therefore, if the Court does not grant a stay and either Delta or the Trustee sell the real property, then Republic could be forever deprived of its ability to exercise the Purchase Option before it has the opportunity to obtain a decision from the Seventh Circuit.

Similarly, the public interest lies in granting a stay of the Interlocutory Order because it is the only way to avoid prejudice to Republic's appellate rights regarding a significant legal issue which is sure to impact the rights of purchasers of assets for the FDIC in other circumstances. Not only would not granting a stay deprive Republic of its legal entitlement to exercise the Purchase Option, but also it conflicts with the need for appellate review of the Ruling in order to bring it in line with the important policies behind FIRREA and the FDIC's ability to transfer assets notwithstanding anti-assignment provisions.

Finally, Republic position has substantial merit and should likely prevail on appeal. The primary subject of the appeal is a legal issue subject to *de novo* review. Moreover, courts throughout the country have concluded in similar circumstances that, in the course of carrying out its statutory duties to administer the assets of a failed bank, the FDIC may transfer a contract intact to allow the purchaser to step into the shoes of the original contracting bank, notwithstanding any contractual restrictions. In other words, the Interlocutory Order stands contrary to the decisions of every other federal appellate and district court that has addressed the same issue, and it is therefore likely that the ruling will be reversed on appeal.

In particular, the appeal will require the proper interpretation of FIRREA, which "provides a mechanism for dealing with financially distressed banks in a way the preserves their going-concern value." *Iberiabank v. Beneva 41-I, LLC*, 701 F.3d 916, 921 (11th Cir. 2012) (citing *McAndrews v. Fleet Bank of Massachusetts, N.A.*, 989 F.2d 13, 15 (1st Cir. 1993)). "FIRREA is filled with provisions that vary ordinary contract rules in the FDIC's favor." *Beckley Capital Limited Partnership v. DiGeronimo*, 184 F.3d 52, 56 (1st Cir. 1999). For purposes of the instant Motion, the two most significant provisions in FIRREA are 12 U.S.C. §§ 1821(d)(2)(G)(i)(II) and (e)(13)(A).

The first of these provisions empowers the FDIC to "transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer." 12 U.S.C. § 1821(d)(2)(G)(i)(II). This provision gives the FDIC the power to transfer the assets of a failed financial institution, such as Citizens, to a successor institution, such as Republic, and place the successor in the exact same position occupied by the failed bank. The second of these provisions empowers the FDIC to "enforce any contract . . . entered into by the depository institution notwithstanding any provision of the contract providing for termination, default, acceleration, or exercise of rights upon, or solely by reason of, insolvency or appointment of or the exercise of rights or powers by [the FDIC]." 12 U.S.C. § 1821(e)(13)(A). This provision renders unenforceable those contractual provisions that would explicitly or implicitly prohibit the FDIC from performing its powers under FIRREA. *See Iberiabank*, 701 F.3d at 924-25 (contract clause that would hinder transfer of assets unenforceable).

These provisions have been interpreted broadly by numerous courts to allow the FDIC to transfer a contract notwithstanding an anti-assignment provision in a private contract or a state

6

statute that would otherwise prohibit assignment. *See, e.g.*, *Iberiabank*, 701 F.3d 916 (FIRREA preempts termination clause in lease that provides right to terminate if lessee is sold or transferred to another banking institution); *FDIC v. Bank of Boulder*, 911 F.2d 1466 (10th Cir. 1990) (*en banc*) (FIRREA preempts state statute that makes letters of credit non-assignable).[3]

The Interlocutory Order conflicts with FIRREA and these well-reasoned decisions. *First*, the Interlocutory Order does not address 12 U.S.C. § 1821(e)(13)(A).[4] Here, the FDIC, after taking over Citizens, indisputably could have exercised the Purchase Option under the Lease. Because the FDIC instead transferred the Purchase Option to Republic, the Trustee

---

[3] *See also In re Marin Town Center*, 142 B.R. 374 (N.D. Cal. 1992) (otherwise non-assignable stipulation, approve by court, freely assignable by FDIC pursuant to FIRREA); *Jaycee Atlanta Development, LLC v. Providence Bank*, 330 Ga. App. 322 (2014) (anti-assignment clause in loan agreement not enforceable against successor bank following FDIC's appointment and transfer); *First Nationwide Bank v. Florida Software Services, Inc.*, 770 F. Supp. 1537 (M.D. Fla. 1991) (FIRREA authorized transfer of license agreements notwithstanding nonassignability language in contracts); *NVMercure Limited Partnership v. Resolution Trust Corp.*, 871 F. Supp. 488 (D.D.C. 1994) (FIRREA preempts right of first refusal); *Resolution Trust Corp. v. Charles House Condominium Ass'n*, 853 F. Supp. 226 (E.D. La. 1994) (FIRREA expressly preempts condo association's contractual right of first refusal to purchase condos); *First State Bank of Northwest Arkansas v. McClelland Qualified Personal Residence Trust*, No. 14-cv-130, 2014 U.S. Dist. LEXIS 166714 (M.D. Ga. Dec. 2, 2014) (FIRREA preempts Georgia statute that arguably bars assignment of fraudulent conveyance claims); *Alma Group, LLC v. Palmer*, 143 S.W.3d 840 (Ct. App. Tex. 2004) (citing with approval *First Nationwide Bank*, but not reaching issue because underlying contract did not contain nonassignability provision).

[4] In 2005, Congress amended this subsection to make clear that a contractual provision that would cause termination of the contract (or some part of it) based on the FDIC's exercise of its powers under FIRREA is unenforceable. *Iberiabank*, 701 F.3d at 925. The amendment is in ***bold italics***: The FDIC "may enforce any contract . . . entered into by the depository institution notwithstanding any provision of the contract providing for termination, default, acceleration, or exercise of rights upon, or solely by reason of, insolvency or appointment of ***or the exercise of rights or powers by*** [the FDIC]."

7

opportunistically seeks to void the Purchase Option in order to extract a greater benefit than the Lease actually provided to him. The Trustee's attempt runs afoul of § 1821(e)(13)(A).[5]

*Second*, Judge Guzman's reliance on *Waterview*, 105 F.3d 696, and *O'Melveny*, 512 U.S. 79, was misplaced. Most notably, neither of those decisions addressed the FDIC's power to transfer assets notwithstanding an anti-assignment provision. In *Waterview*, the court considered whether the FDIC could effectively repudiate a burdensome contract option that favored a third party without paying repudiation damages pursuant to 12 U.S.C. § 1821(e). *See* 105 F.3d at 697-98. Here, the Purchase Option was held by and favored the failed bank, not a third party, and thus repudiation is not at issue. Moreover, all Republic seeks here is enforcement of the exact same bargain that Citizens originally had, so the Trustee is not being deprived of any right.

In *O'Melveny*, the Supreme Court considered "whether, in a suit by the FDIC as receiver of a federally insured bank, it is a federal-law or rather a state-law rule of decision that governs the tort liability of attorneys who provided services to the bank." 512 U.S. at 80-81. The court concluded that FIRREA is not a blanket preemption of state law defenses. *Id.* at 89. The court did *not* hold that FIRREA never preempts state law or private contract rights. To the contrary, the court expressly noted that claims in the hands of the FDIC are to be adjudicated "under state law, *except where some provision in the extensive framework of FIRREA provides otherwise*." *Id.* at 87. In the instant case, as so many other courts have held, §§ 1821(d)(2)(G)(i)(II) and 1821(e)(13)(A) preempt state law and private contracts that purport to preclude the FDIC from transferring the contract to a successor bank. Thus, the issue presented falls squarely within the exception expressly articulated by the Supreme Court in the *O'Melveny* decision.

---

[5] As recognized by the Eleventh Circuit, the clause at issue need not expressly state that it is terminated upon the FDIC's exercise of its powers in order to be unenforceable pursuant to § 1821(e)(13)(A). *Iberiabank*, 701 F.3d at 925.

*Third*, the Interlocutory Order undermines the important policies behind FIRREA. For example, courts recognize that the FDIC's broad powers are intended, at least in part, to permit the FDIC to maximize the value of a failed bank's assets.[6] *See Lawson v. Household Bank F.S.B.*, 20 F.3d 786, 788-89 (7th Cir. 1994); *Beckley*, 184 F.3d at 56 (granting successor bank ability to utilize longer statute of limitations under FIRREA to increase marketability of assets). Where the contractual counterparty is not harmed, courts have recognized that maximizing the value of assets in the hands of the FDIC outweighs the enforcement of anti-assignment provisions. *See, e.g.*, *Marin Town Center*, 142 B.R. at 382 (noting that counterparty cannot be said to have suffered substantial detriment due to FDIC's transfer); *Beckley*, 184 F.3d at 57 ("[I]n some situations it is essential to make obligations held by the FDIC marketable (and the debtor's plight is less sympathetic since the FDIC could itself still sue).")

For each and all of the foregoing reasons, Republic has established a valid basis for the requested stay, and the Trustee's effort to resist this request or inflate the amount of the bond is insupportable and should be rejected.

### III. IN THE ALTERNATIVE, REPUBLIC SHOULD NOT HAVE TO POST A TOTAL BOND IN EXCESS OF $980,000 IN ORDER TO OBTAIN A STAY OF THE INTERLOCUTORY ORDER.

Third, even if the Court believes the posting of some additional bond amount is appropriate, the amount sought by the Trustee is excessive because there is no scenario under which the Trustee could both keep the $1.5 million purchase price and the $516,000 in money damages. Instead, as explained below, if Republic prevailed in the appeal, the most it would

---

[6] As discussed above, Republic does not seek to increase the value of the Lease or Purchase Option as it existed in the hands of Citizens. ***Maximizing*** the value of the Lease by recognizing the FDIC's power to place Republic in the same position as Citizens is fundamentally different than ***increasing*** the value of the Lease by depriving the Trustee of some benefit of the original bargain. The Trustee, not Republic, asks this Court to erase one of the provisions of the contract.

have to pay the Trustee would be $980,000, in exchange for which Republic would receive title to the real property.

Here, Republic seeks to post a bond in the amount of $550,000 to secure the $516,000 money judgment. In addition, Republic has already paid $520,000 in "reasonable use and occupancy" to the Trustee for property that Republic should rightfully own, which funds have been deposited into a cash collateral account for the benefit of Delta. If Republic prevails on appeal, Republic will be entitled to have the $520,000 returned, which amounts are property credited against the purchase price leaving a balance of, at most, $980,000. There is no scenario under which the bond should exceed this amount, and on this additional basis, the Trustee's position should be rejected.

## CONCLUSION

For the foregoing reasons, the Court should grant Republic's Motion for a stay to take effect upon the posting of a bond in the amount of $550,000; or grant Republic such other relief as this Court deems just and proper.

Dated: June 20, 2016

Respectfully submitted,

REPUBLIC BANK OF CHICAGO

By: /s/ James B. Sowka
     One of Its Attorneys

P. Shawn Wood (6210455)
James B. Sowka (6291998)
M. Ryan Pinkston (6297427)
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603-5577
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

*Special Appellate Counsel for Republic Bank of Chicago*

**CERTIFICATE OF SERVICE**

I, James B. Sowa, an attorney, hereby certify that on June 20, 2016, I caused a copy of the attached **Republic Bank's Memorandum of Law in Support of Motion For Approval of Supersedeas Bond For Stay Pending Appeal** to be served upon the following persons as indicated on the below Service List.

/s/ James B. Sowka
James B. Sowka

**Service List**
**Case 1:13-cv-06835**
**Republic Bank of Chicago v. Desmond**

**CM/ECF Electronic Mail Distribution**
- **Michael Benjamin Bregman**
  mbregman@rfbnlaw.com
- **William G Cross**
  wcross@fslegal.com
- **Michael K. Desmond**
  mdesmond@fslegal.com
- **James R. Figliulo**
  jfigliulo@fslegal.com
- **Richard H. Fimoff**
  rfimoff@rsplaw.com,fb@rsplaw.com
- **Edward P. Freud**
  epfreud@rwrlaw.com
- **Marc S. Porter**
  mporter@fslegal.com
- **Richard Lee Stavins**
  rstavins@rsplaw.com
- **Robert J. Trizna**
  rtrizna@rsplaw.com,dcasey@rsplaw.com
- **U.S. Bankruptcy Court, Clerk**
  ilnb_appeals@ilnb.uscourts.gov